## J. W. CARMICHAEL v. SOUTHERN BELL TELEPHONE AND TELEGRAPH COMPANY.

### (Filed 15 November, 1911.)

1. **Damages, Compensatory—Punitive Damages.**

   When compensatory damages are allowable they should not be confined to an actual pecuniary loss, upon the theory that any recovery above actual loss in money or time having a definite pecuniary value partakes of the nature of punitive damages.

2. **Damages, Compensatory—Measure of Damages.**

   On an issue as to actual or compensatory damages caused by an injury inflicted, the plaintiff may recover, in proper instances, whatever the jury may decide to be a fair and just compensation for the injury, including his actual loss in time or money, physical inconvenience and mental suffering or humiliation endured, and which could be considered as a reasonable and probable result of the wrong done.

3. **Same—Standards of Measurement—Contracts.**

   While a recovery for damages for a breach of contract is ordinarily confined to such as are in reasonable contemplation of the parties at the time of making it, which are susceptible of ascertainment with a reasonable degree of certainty, and limited to pecuniary recompense for the loss sustained by the injured party, the position having its origin and basis in the fact that the vast majority of contracts concern themselves with pecuniary values and have the pecuniary standard for adjustment alone in contemplation, the doctrine does not extend to an agreement which clearly has reference to a different standard, for in such cases damages in case of breach must be awarded according to the standard which the parties have adopted.

4. **Corporations—Public Service—Breach of Contract—Torts— Measure of Damages.**

   A telephone company, a public-service corporation operating under a public franchise, is responsible for its breach of duty in rendering the service it has undertaken to perform for one having contractual relationship with it, and when suffering special injury by reason of such breach, he is entitled to sue in tort, and, in case of recovery, to have his damages admeasured as in that character of action.

5. **Same—Telephone Companies—Payment of Rentals.**

   The plaintiff having protested to defendant that he had paid for the rental of his telephone service at his home, claiming he

CARMICHAEL *v.* TELEPHONE CO.

had a receipt therefor which he had temporarily mislaid, but promised to produce, found upon returning home Saturday night that the telephone connection had been severed there in his absence and so continued until the following Monday morning, when he paid under protest and had his telephone service restored. There was conflicting evidence as to whether the plaintiff had actually paid the rental, the company protesting that the receipt was given by mistake as to the amount: *Held*, the plaintiff, when his cause of action has been established, may recover upon the tort arising from defendant's breach of contract.

6. **Same—Mental Anguish—Duty to Avoid or Minimize.**

The plaintiff, in this case, having a right to sue a telephone company, a public-service corporation, in tort for wrongfully disconnecting his telephone service, evidence on the question of ·damages was competent which tended to show his suffering and anxiety naturally arising from the fact that his father-in-law was at the time in a hospital, supposed to be in a dangerous condition, which was known to the company, or its managing officers, and occasioned by the loss of the telephone service at such time, but not the suffering and anxiety caused by the placing and condition of the father-in-law; and in awarding any damages imputable to this source, it should be considered whether he did what he reasonably could have done to lessen his anxiety.

7. **Corporations—Telephones—Public Service—Tort—Willful and Wanton—Punitive Damages.**

In awarding damages to one whose telephone service has wrongfully been disconnected by a public-service telephone corporation, the jury may award such punitive damages in addition to compensatory damages as they may deem right and proper, when, in proper instances, they find the act was done maliciously or under such circumstances of willfulness on the part of the defendant as to show a wanton or reckless disregard of plaintiff's rights.

8. **Same—Compensatory Damages—Evidence—Questions for Jury.**

Upon the question of allowing exemplary as well as actual damages in this case, as presented, for the disconnection of the plaintiff's service by the defendant telephone company, the jury should consider as circumstances relevant to the inquiry evidence tending to show that the plaintiff informed the defendant of the payment he had made, that he had a receipt therefor, that the defendant still insisted there was no such payment, and further, that the plaintiff had several times made default in payment of his dues, and that the defendant had been informed by its proper agents that plaintiff. owed the balance concerning which the service had been disconnected.

CARMICHAEL *v.* TELEPHONE CO.

APPEAL from *Peebles, J.,* at April Term, 1911, of NEW
HANOVER.

Civil action to recover damages for wrongfully removing a
telephone from plaintiff's premises.    There was evidence tend-
ing to show that the telephone charges due from plaintiff were
at the rate of $4.50 per quarter, payable in advance, beginning
1 January; that plaintiff on 3 June, 1908, paid defendant the
$4.50 for the quarter beginning 1 April, and took a receipt
for same; that in the latter part of June plaintiff was notified
there was a balance against him of $3 for said quarter, and
unless same was paid the telephone would be removed.    Plain-
tiff protested and informed the agents of defendant company
that he had paid the dues and could produce a receipt.    Plain-
tiff failed to find the receipt readily, as he had given it to his
wife, who was temporarily from home in daily attendance on
her father, who had been operated on and was in the hospital;
and thereupon, in afternoon of 27 June, 1908, defendant com-
pany, while plaintiff was absent, disconnected the phone and
deprived plaintiff and his family of its use from Saturday night
until Monday morning, 29 June; that on Monday morning,
29 June, plaintiff went to the offices of the company, paid the
$3 claimed, under protest, and the service was thereupon
restored; that in July following, the plaintiff found the receipt
for the $4.50, the entire price for the quarter, and on failure
to adjust matters, action was instituted.

On the question of damages, plaintiff testified among other
things that the telephone was used for the purpose of calling
up physicians, hospitals, druggists, doing the marketing, gro-
cery business, and other general household uses, and proposed
further to show that at this particular time plaintiff suffered
special inconvenience and annoyance by reason of the fact
that his father-in-law had been operated on and was then at
the hospital in a dangerous condition, and plaintiff was unable
to communicate with the hospital concerning him or with his
family, which was then at the beach some distance away.

There was evidence from which knowledge of these special
conditions on the part of the company might be inferred.    The
proposed evidence was excluded, and plaintiff excepted.

There was testimony on part of defendant to the effect that plaintiff was not prompt in payment of his telephone dues, and that on two or three occasions before this it had been necessary to disconnect his telephone for nonpayment of dues; that while plaintiff produced a receipt for the $4.50, the dues for the quarter ending 30 June, 1908, as a matter of fact he had only paid $1.50, and it was so reported to the company by the collecting agent; that the receipt for $4.50 was signed by mistake to a printed form in which the amount was so stated, the agent failing to change this to $1.50, the amount actually paid, and that the books of the company showed the amount due to be $3, and that in fact such amount was due for said quarter; that defendant had no malicious or improper motive in disconnecting the telephone or in collecting the $3, but acted in the honest belief it was enforcing its rights in the premises.

His Honor ruled that plaintiff could not in any event recover damages in excess of $3, the amount of overcharge as claimed by plaintiff, and under such ruling the following verdict was rendered:

"1. Did the defendant unlawfully cut out plaintiff's telephone, as alleged in the complaint? Answer: Yes.

"2. If so, what damage is plaintiff entitled to recover therefor? Answer: Three dollars, and interest to date from 29 June, 1908."

Judgment on the verdict for $3, with interest, and plaintiff excepted and appealed, assigning errors.

*Rountree & Carr for plaintiff.*
*H. E. Palmer, B. J. Clay, and J. D. Bellamy for defendant.*

HOKE, J., after stating the case: An impression not infrequently exists, and is sometimes acted on, that in the larger number of ordinary causes compensatory damages should be confined to actual pecuniary loss, and that any recovery above actual loss in money or time having definite pecuniary value partakes of the nature of punitive damages. Speaking to this question in a concurring opinion in *Ammons v. R. R.,* 140 N. C., 199, it was said: "The court below and the parties litigant seem to have considered that the seventh issue on actual

damages was confined to pecuniary loss, and that any recovery over and above this must be had, if at all, on the eighth issue, above set out. But this is not at all true. 'Actual,' in the sense of compensatory damages, is not restricted necessarily to the actual loss in time or money. The claimant may be confined to this, if the jury so determine, but more than this is contained in the term, and more than this is covered by the issue." As said by *Clark, C. J.,* in *Osborn v. Leach,* 135 N. C., 628: "Where the facts and nature of the action so warrant, actual damages include pecuniary loss, physical pain, and mental suffering," etc. And again: "Compensatory damages include all other damages than punitive, thus embracing not only special damage as direct pecuniary loss, but injury to feelings, mental anguish," etc., citing 18 Am. and Eng. Enc. (2 Ed.), 1082; Hale on Damages, pp. 99, 106. And this last author says: "It may be stated as a general rule, in actions of tort, that whenever a wrong is committed which will support an action to recover some damages, compensation for mental suffering may also be recovered if such suffering follows as a natural and proximate result." And so here, where a passenger is wrongfully ejected from a railroad train, the demand may be considered as one in tort, and, on an issue as to actual or compensatory damages, he may recover what the jury may decide to be a fair and just compensation for the injury, including his actual loss in time or money, physical inconvenience, and mental suffering or humiliation endured, and which could be considered as a reasonable and probable result of the wrong done. *McNeill v. R. R.,* 135 N. C., 683; *Head v. R. R.,* 79 Ga., 358; Hale on Damages, *supra,* sec. 261. As said by *Bleckley, J.,* in *Head's case:* "Wounding a man's feelings is as much actual damages as breaking his limb. The difference is that one is internal and the other external; one mental, the other physical. At common law compensatory damages include, upon principle and, I think, upon authority, salve for wounded feelings, and our Code had no purpose to deny such damages where the common law allowed them."

And on the subject of punitive damages it was further said: "Exemplary or punitive damages are not given with a view to

compensation, but are under certain circumstances awarded, in addition to compensation, as a punishment to defendant and as a warning to other wrongdoers. They are not allowed as a matter of course, but only where there are some features of aggravation, as when the wrong is done willfully and maliciously, or under circumstances of rudeness or oppression, or in a manner which evinces a reckless and wanton disregard of plaintiff's rights."

In the view of compensatory damages, suggested with approval in this citation, there was error in the ruling which limited plaintiff's recovery in any aspect of the case to the $3, the amount of money wrongfully collected by defendant, whether the action should be considered as one for a breach of contract or for a tort. It is true that recovery for breach of contract is confined to such damages as were in the reasonable contemplation of the parties at the time same was made and which are susceptible of ascertainment with a reasonable degree of certainty, and that ordinarily this damage is limited to pecuniary recompense for the loss sustained by the injured party; but this will be found to have its origin and basis in the fact that the vast majority of contracts concern themselves with pecuniary values and have the pecuniary standard for adjustment alone in contemplation; but where an agreement clearly has reference to a different standard, damages in case of breach must be awarded according to the standard which the parties have adopted. This is the principle upon which recoveries for mental anguish in a certain class of telegraph cases, and when treated simply as actions for breach of contract, are properly made to rest, as shown in the well-considered opinion by our present *Chief Justice* in *Young v. Telegraph Co.*, 107 N. C., 370, a decision since followed and applied by the Court in numerous cases; and so in contracts for telephone service for household purposes pecuniary values are not ordinarily in contemplation, and on breach, even when the action is simply for breach of contract, a different standard of adjustment must necessarily or may properly be adopted, to wit, a fair compensation for the loss and for the inconvenience and annoyance

in being wrongfully deprived of the service stipulated for. *Telephone Co. v. Hobard,* Miss., 42 So. Rep., 349; Hale on Damages, p. 102.

On the allegations of the complaint, however, and the facts in evidence, the plaintiff is not confined to a recovery for breach of contract. It appears that defendant is a public-service corporation operating under a public franchise, and for breach of duty in rendering the service it has undertaken to perform, one having contract relations with such company and suffering special injury by reason of such breach is entitled to sue in tort, and, in case of recovery, have his damages admeasured as in that character of action. This was held in *Peanut Co. v. R. R.,* 155 N. C., 148, citing several other decisions to like effect, and see, in that case more especially, the concurring opinion of *Associate Justice Allen,* as to the obligation of diligence imposed by the law upon corporations of this kind and the character of action available in case of breach causing special damages to persons having contract relations with such companies.

Plaintiff, then, having a right to sue in tort if his cause of action is established, is entitled to recover a compensation for the annoyance and inconvenience and humiliation fairly attributable to the wrong done and under facts as they existed at the time the same was committed. *Peanut Co. v. R. R., supra.*

And in this view the annoyance and inconvenience naturally arising from the fact that plaintiff's father-in-law was at the time in the hospital and supposed to be in a dangerous condition, if this circumstance was known to the company or its managing officers—not, of course, the suffering and anxiety caused by the father-in-law's placing and condition, but the annoyance and anxiety occasioned by the loss of the telephone service at such time. In considering any damages imputable to this source, the obligation on plaintiff to do what he reasonably could to lessen his anxiety is also a proper subject for consideration. *Bowen v. King,* 146 N. C., 385; *R. R. v. Hardware Co.,* 143 N. C., 54.

On the question of punitive or exemplary damages, recurring again to the doctrine as stated in the *Ammons case, supra,* if the jury should find that the wrong complained of was committed and that the same was done maliciously or under such circumstance of willfulness on part of defendant as to show a wanton or reckless disregard of plaintiff's rights, they may, in addition to compensatory damages, award such additional damages by way of punishment as they may deem right and proper. In this aspect of the matter the principles and authorities applicable are more fully discussed and referred to in the case of *Williams v. R. R.,* 144 N. C., 502.

On this question of allowing exemplary damages, as well as the amount, in case the jury should determine to award the same, the fact that plaintiff informed defendant of the payment of the amount due and that he had a receipt showing this, and that defendant still insisted there was no such payment, and, further, the fact that plaintiff had several times before made default in payment of his dues, and that this collecting agent had informed the managing officers of the company there was a balance still due, and that the books of the company showed this to be correct, are circumstances relevant to the inquiry.

For the error indicated plaintiff is entitled to a new trial of this cause, and it is so ordered.

New trial.