Error.

JOHN BYERS v. SOUTHERN EXPRESS COMPANY.

(Filed 13 May, 1914.)

1. Mental Anguish — Express Companies — Trials — Negligence — Burial Caskets—Damages.

An express company is liable for mental anguish caused to a husband by its negligent delay in transporting and delivering a burial casket to be used in the interment of his wife, of which the receiving agent was informed at the time; and where by reason of such failure the husband was forced to bury his wife in a makeshift or cheap casket, the ground for such recovery is sufficiently shown.

2. Same—Contracts—Lex Loci—Federal Decisions—Interstate Commerce.

Where an express company is liable under our laws for mental anguish for its negligent failure to promptly transport and deliver a metal casket to be used in the interment of the plaintiff's wife, and the contract of shipment is made here, the question of recovery is not dependent upon the Federal decisions in relation to interstate commerce.

**3. Same—Special Damages—Hepburn Act.**

The Hepburn act with the Carmack amendment, authorizing a common carrier, under certain circumstances, to limit the amount of recovery in the event of its negligence in regard to interstate shipments, relates only to the damage which may thereby have been occasioned to "property," decreasing its value, and has no application to a recovery of special damages caused by the negligent delay by the carrier in its transportation and delivery, where such are otherwise recoverable; notwithstanding a contrary stipulation in the bill of lading.

**4. Mental Anguish — Express Companies—Negligent Delay—Shipment Refused—Value of Shipment—Receipt—Right of Action—Estoppel.**

Where an express company is liable to the plaintiff in an action to recover damages for mental anguish it has caused him in its negligent delay in the shipment or delivery of a burial casket, which consequently came too late at its destination, and was therefore refused, he is not barred of his right to recover therefor by receiving or receipting for the amount of money he had lost on that account.

HOKE, J., concurring. BROWN, J., dissenting; WALKER, J., concurring in dissenting opinion.

APPEAL by defendant from *Bragaw, J.,* at August Term, 1913, of BUNCOMBE.

*Mark W. Brown for plaintiff.*
*Martin, Rollins & Wright for defendant.*

CLARK, C. J.  The plaintiff's wife died at Hickory Grove, S. C., while on a visit to her mother, and plaintiff, who lived in Asheville, purchased there a casket, robe, gloves, hose, and other articles suitable for her burial, and shipped them by the defendant to Hickory Grove, notifying the express agent that these articles were to be used in the burial of his wife, the following morning. The agent promised to ship the casket and other articles on the first train, and guaranteed that they would be delivered that night or early the next morning in full time for the funeral.

The distance via Spartanburg and Blacksburg to Hickory Grove was 112 miles, and if the casket had left Asheville by the

first train at 4:10 p. m. it would have reached its destination the same night. The casket had been delivered to the defendant early that morning. If it had been held by defendant at Spartanburg all night, and then been shipped to Blacksburg at 7:30 the following morning on train 36, which carried the express, it would have reached Blacksburg at 8:33 a. m., and would have left there at 9:05 a. m., reaching Hickory Grove at 9:37 a. m., in ample time for the funeral at 11 a. m.

The distance via Marion was 124 miles, and if the casket had been shipped on the first train over that route, it would have left Asheville at 3:25 p. m., reaching Hickory Grove at 8:06 p. m. the same day.

Instead of shipping the casket by either of these two routes, it was sent via Columbia, S. C., a distance of 300 miles, and could not have reached Hickory Grove till 5:25 p. m. the following day. As a matter of fact, the casket did not reach Hickory Grove until Wednesday, the second day after it left Asheville. The funeral was on Tuesday. The purchase and delivery to the defendant was early Monday morning.

The plaintiff left Asheville Monday night via Spartanburg, and when he reached Hickory Grove Tuesday morning he found that the casket had not arrived. The funeral, which had been fixed for 11 o'clock, was then changed to 4 p. m. The casket still did not come, and finding that the body could not be held longer, by the aid of a friend he procured a cheap casket, but without proper burial clothing for his wife, and the burial took place.

The above is condensed from the uncontradicted testimony. The defendant admits the negligence, indorsing on its voucher that the "casket was *misrouted* from Asheville, N. C., by Transfer Clerk Deweese."

The defendant put in evidence the following receipt: "Received at Asheville, on 25, May, 1912, $64.17, said amount being in full payment for one coffin delivered to the Southern Express Company at Asheville, N. C., on 1 April, 1912, by John Byers, to be shipped to Sarah Moore, Hickory Grove, S. C." On this was a memorandum that the casket had been misrouted, and

was refused on that account on arriving at destination too late for the funeral, and that the defendant had returned it to Asheville and sold it for $15 to the company from whom Byers had bought it.

The defendant claims that the acceptance of payment for the value of the casket should be construed as a waiver by plaintiff of his right to other damages. The receipt does not say so, but recites that it is "in full payment for one coffin." The uncontradicted evidence of the plaintiff is that the defendant "paid him for all the money he paid out on the casket and other things, but did not pay him anything for the damages." · It was competent thus to explain the receipt, if necessary. Counsel for the defendant also admitted that it was fully understood by plaintiff's attorney and the agent of the defendant at the time the receipt was signed that it did not cover any claim for the damages. The record shows as follows: The court said, speaking to defendant's counsel: "You gentlemen do not claim that you settled anything that is covered by this complaint?" To which Mr. Martin replied: "No, your Honor; we do not claim that we paid anything for mental suffering."

There was evidence of mental suffering, but it would have been inferred as a matter of law upon the circumstances of this case. Under the law of this State, where the contract of shipment was made, the plaintiff is entitled to recover such damages. *Thompson v. Express Co.,* 144 N. C., 389; *Penn v. Telegraph Co.,* 159 N. C., 306. Upon all the authorities, damages for mental anguish are compensatory damages. *Carmichael v. Telephone Co.,* 157 N. C., 25, where the authorities are summed up by *Hoke, J.,* citing, among other cases, *Osborn v. Leach,* 135 N. C., 628, and *Head v. R. R.,* 79 Ga., 358, quoting *Bleckley, C. J.,* in the latter case, who says: "Wounding a man's feelings is as much actual damages as breaking his limb. The difference is that one is internal and the other external; one mental, the other physical. At common law, compensatory damages include, upon principle and upon authority, salve for wounded feelings, and our Code had no purpose to deny such damages where the common law allowed them."

165—35

It makes no difference, as this Court has always held, whether the action or claim to recover damages for mental suffering is based upon breach of contract or upon tort. *Penn v. Telegraph Co.,* 159 N. C., 309, and numerous cases there quoted. In *Thompson v. Express Co.,* 144 N. C., 392, it was held, in the opinion by *Hoke, J.,* that the claim of damages for mental anguish "is not a separate cause of action at all, but only a further element of damages." It follows, therefore, that settlement as to the coffin, which was paid for by the defendant and resold to the original owner, was in no wise a settlement of "the further element of damages." Besides, as counsel frankly admitted, there has been in fact no settlement as to damages for mental anguish. The plaintiff has received no compensation for such damages, which he is now suing for.

The only other point raised is that this being an interstate shipment, under the "Hepburn Act" the defendant was authorized to limit its liability. But a reference to that statute shows that such authorization extends only to liability for damages "to such property." The compensatory damages sought by reason of the mental anguish sustained by the plaintiff from the misconduct of the defendant is *special damages,* and was not in the contemplation of, nor within the language used in, that act.

The defendant contends that it is protected by the following stipulation in the bill of lading: "Agreed that the defendant's liability in no event shall exceed the sum of $50 on account of loss or damage to said shipment, or delay in delivering the same." The expression, "delay in delivering the same," is not within the words of the act of Congress upon which the defendant relies. The Carmack amendment to the Interstate Commerce Act is construed in *Adams Express Co. v. Croninger,* 226 U. S., 491; *R. R. v. Elevator Co., ib.,* 427; *R. R. v. Carl,* 227 U. S., 639; *R. R. v. Harriman, ib.,* 657, and none of them construe the act to embrace damages accruing from delay, and still less do any of those decisions intimate that the act covers special damages, such as mental anguish, which are not damages to the

property. The Carmack amendment is set out in 226 U. S., 503, and provides that the carrier shall be liable to the lawful holder of any bill of lading "for any *loss, damage, or injury to such property* caused by it, or by any common carrier, etc., to which such property may be delivered or over whose lines such property may pass; and no contract, receipt, rule or regulation shall exempt such common carrier, railroad, or transportation company from the liability hereby imposed." It would have seemed that the intent of this amendment to the act was to prevent the construction which had been put upon the Interstate Commerce Act in *Hart v. R. R.,* 112 U. S., 331, under which the carrier by stipulation could limit its liability, contrary to the common-law rule. But the United States Supreme Court is the ultimate authority in the construction of a Federal statute, and has held otherwise. We are not, however, called upon to read into the statute an extension of it to other fields and to other matters, such as the claim now made, that the act repeals all claims for special damages which are not within the terms of the words of the statute—"loss, damage, or injury to such property." The United States Supreme Court has not gone that far, and it is very certain upon the face of the statute that Congress has not done so. Damages of this nature have no relation to the value of the property.

In *Hale v. Bonner,* 82 Texas, 33, 14 L. R. A., 336, it is held that damages for mental distress are recoverable for negligent delay in the transportation of the corpse of plaintiff's husband.

In *R. R. v. Hull* (Ky.), 57 L. R. A., where the shipment was from Asheville, N. C., to Slaughtersville, Ky., it was held: "Mental suffering may be considered in assessing the damages against a carrier for breach of its contract to transport a corpse. The question as to the negligence of a carrier in failing to forward a corpse by a certain train is for the jury."

The ground of recovery here, as already stated, is not for damages to the property shipped, and therefore the cause of action does not come within the act of Congress, but it is for the "special damage," the mental anguish, caused by the negligence of the defendant in failing to deliver the coffin as it should have

done within time for the funeral. Under the circumstances, this was well calculated to cause great mental anguish, and justified the verdict of $200 rendered by the jury.

No error.

HOKE, J., concurring: As at present advised, I incline to the opinion that mental anguish cannot in itself properly be made the basis of a separate and distinct cause of action, but is only an element of damages allowable in a certain class of cases. In the present instance I consider this and the other action for negligent delay in shipment of goods permit such recovery, in the discretion of the jury, and I find no plea or evidence tending to show that any sum has been paid or accepted in satisfaction of plaintiff's claim.

BROWN, J., dissenting: I think the defendant is not liable.

1. That the plaintiff, having been paid in full for his actual damages, cannot split up his cause of action, and when he accepted pay for the goods he settled all claims for damages arising out of the contract of shipment. This is expressly decided in *Eller v. R. R.*, 140 N. C., 140; *Kimball v. R. R.* (New Jersey), 77 Atl., 533.

2. That under the laws of the United States damages cannot be recovered for mental anguish by delay in the shipment of goods.

3. That as the shipment was one in interstate commerce, plaintiff was bound by the terms of the receipt set out, and could not recover damages in excess of $50 in any event.

These two propositions appear to be conclusively settled in favor of the defendant by the Supreme Court of the United States. *Chicago, etc., R. R. v. Hardwick Elevator Co.*, 226 U. S., 427; *Adams Express Co. v. Croninger*, 226 U. S., 491; *Kansas, etc., R. R. v. Carl*, 227 U. S., 639; *M. K. T. R. R. Co. v. Harrison*, 227 U. S., 657.

MR. JUSTICE WALKER concurs in this dissent.