SOMMERVILLE v. CHESAPEAKE & POTOMAC TELEPHONE CO.*

(Court of Appeals of District of Columbia. Submitted March 4, 1919. Decided May 5, 1919.)

No. 3190.

1. TELEGRAPHS AND TELEPHONES ⟨⇒⟩33(2)—INTERRUPTION IN SERVICE—CONTRACT.

A telephone contract, providing that a proportionate part of the subscription price would be rebated for interruptions in service continuing after reasonable written notice to the company, but that no other liability should attach, relates only to interruptions taking place without company's knowledge, and is inapplicable to a stoppage of service for failure to pay disputed charges.

2. DAMAGES ⟨⇒⟩91(1)—PUNITIVE DAMAGES.

Punitive damages are not allowed, except where defendant recklessly disregards the rights of plaintiff.

3. TELEGRAPHS AND TELEPHONES ⟨⇒⟩69—STOPPAGE OF SERVICE—PUNITIVE DAMAGES.

Plaintiff telephone subscriber *held* not entitled to punitive damages because defendant telephone company stopped serving him on account of his failure to pay disputed telephone charges.

4. TELEGRAPHS AND TELEPHONES ⟨⇒⟩67(1)—STOPPAGE OF SERVICE—DAMAGES.

A telephone company, which wrongfully stopped serving a subscriber because of his failure to pay disputed charges, is liable in damages for the resulting inconvenience, annoyance, and loss of time occasioned the subscriber.

Appeal from the Supreme Court of the District of Columbia.

Suit by J. Robert Sommerville against the Chesapeake & Potomac Telephone Company. Judgment for plaintiff, and he appeals. Reversed and remanded for a new trial.

George E. Sullivan, of Washington, D. C., for appellant.

Henry B. F. Macfarland, of Washington, D. C., for appellee.

SMYTH, Chief Justice. Sommerville rented a telephone from the Chesapeake & Potomac Telephone Company under a contract whereby he was required to pay $3.25 a month in advance for its use. This gave him the right to 600 outgoing calls in a year, but he was obliged to pay an additional sum for all such calls in excess of that number. A controversy arose between him and the company with respect to the number of calls. The company claimed that he had used 825, while he asserted that he had made only 739 calls. For this number he paid, and refused to pay for more. During July, 1913, a month for which he had paid $3.25 in advance, the company, without any notice to him, cut off his service for one day, claiming that he had failed to pay the amount due for the calls which he had used.

Some 40 or 50 per cent. of Sommerville's business, that of selling engine room supplies, was done over the telephone. After his outgoing service had been cut off, he could not talk with his customers over the telephone, except when they "called him up." If he desired to initiate a call, he was not permitted to do so. In such case he was compelled to visit the patron with whom he wished to communicate

⟨⇒⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

*Certiorari denied 250 U. S. ——, 40 Sup. Ct. 10, 64 L. Ed. ——.

and explain why he was not allowed to use the telephone. This, he says, caused him annoyance, inconvenience, and humiliation. In his contract with the telephone company was this condition:

"1. If the service is interrupted otherwise than by the negligence or willful interference of the subscriber, a rebate at the minimum annual rate for the use of a station and for local messages, fixed in the schedule in force at the beginning of the year in which the interruption occurs, shall be made for the time such interruption continues after reasonable notice in writing to the company, but no other liability shall, in any case, attach to the company."

Sommerville brought suit against the company for damages, alleging that he was not indebted in any sum whatever at the time his service was cut off and that the company's action was without justification. The company defended on the ground that he was indebted to it, as above stated, and that because of this it had a right to do what it did. The court instructed the jury that if they found that Sommerville was not indebted to the company at the time the service was withdrawn, he would be entitled to damages, but limited the amount thereof to a proportionate part of the $3.25 which he had paid for the use of the telephone for one month; in other words, that since he was deprived of its use for only one day he could recover only one-thirtieth of that sum. In obedience to this instruction, the jury awarded him 11 cents damages.

It is claimed by Sommerville that the court erred in this instruction; that he was entitled, not only to a proportionate part of the $3.25, but also to exemplary damages, and damages for the inconvenience and humiliation which he suffered. On the other hand, the company asserts that under the provision of the contract quoted above his recovery was limited to the amount paid by him to the company for the period, one day, for which it refused him service.

[1] The jury having found that Sommerville was not indebted to the company at the time his service was withdrawn, we must accept that as a fact, and therefore proceed upon the theory that the action of the company was a violation of his contract. The only question, then, before us, relates to the measure of damages. We do not think the provision of the contract quoted has any bearing upon the matter. It relates to an interruption which takes place without the knowledge of the company, for it provides that the right to damages shall not accrue until "reasonable notice in writing to the company" shall have been given. It does not cover an interruption which is knowingly and purposely caused, as here, by the company itself. The act complained of, while in a sense an interruption, was more in the nature of a termination of the contract for noncompliance with its terms. Nor does the concluding clause of the provision, which says "but no other liability shall, in any case, attach to the company," affect the matter. This, in our opinion, has reference only to the interruption mentioned in the first part of the provision, and was not intended to cover any and every dereliction of which the company might be guilty with respect to the duty which it owed to Sommerville. The measure of damages, we think, must be settled by the common law, and not by the contract.

[2, 3] We at once put out of view the contention of Sommerville that he is entitled to punitive damages. Such damages are never allowed, except where the act has been done by the defendant, or by his authority, with a reckless disregard of the rights of the other party. Lake Shore, etc., Ry. Co. v. Prentice, 147 U. S. 101, 107, 13 Sup. Ct. 261, 37 L. Ed. 97; Denver, etc., Ry. Co. v. Harris, 122 U. S. 597, 609, 7 Sup. Ct. 1286, 30 L. Ed. 1146; Woodward v. Ragland, 5 App. D. C. 220, 229. Here the company acted in good faith, believing that Sommerville was indebted to it, and that it had a right to put an end to his service.

[4] But we think that Sommerville is entitled to more than a proportionate part of the $3.25. While the inconvenience which he suffered was for a short period of time, the same principle must apply as if it was for a month or more. It does not seem reasonable that in these days, when a telephone is an indispensable adjunct to every line of business, the inevitable inconvenience, annoyance, and loss of time caused to a subscriber by the wrongful action of the company in cutting off his service without notice should not be regarded as a proper subject for compensatory damages. To prove that one lost a certain number of dollars by reason of the company's action might be very difficult, and yet, we think, all reasonable men would say that he was injured thereby. That the company may for just cause, such as the failure to pay his bills when the same become due, refuse to further serve a patron, we may concede (Southwestern Telephone & Telegraph Co. v. Danaher, 238 U. S. 489, 35 Sup. Ct. 886, 59 L. Ed. 1419, L. R. A. 1916A, 1208); but, when the company takes such action, it must know at its peril that it has a valid reason for doing so. Here, according to the verdict of the jury, it was wholly without justification.

Nor is authority wanting for the proposition that the company must respond in damages for its action in a case like this.

"The damage sustained by the loss of a telephone in its very nature is largely composed of inconvenience and annoyance. That a person deprived of the use of the telephone is materially damaged, all will concede. What is the amount of damage in dollars and cents cannot be accurately stated by the party suing, for the reason that his damage consists not only in pecuniary losses; but it consists in inconvenience, discomfort, and an annoyance, and it must be left to the jury to determine what is the damage sustained, taking into consideration the discomfort, the annoyance, and inconvenience suffered, together with actual and pecuniary losses." Telephone Co. v. Hobart, 89 Miss. 252, 262, 263, 42 South. 349, 351 (119 Am. St. Rep. 702).

In Shepard v. Milwaukee Gaslight Co., 15 Wis. 349, 82 Am. Dec. 679, a case in which the defendant refused to furnish gas to the plaintiff, the court said:

"The 'inconvenience and annoyance' occasioned directly by the wrongful act or refusal of the defendant are always legitimate items in estimating the damages in actions of this kind."

See, also, Carmichael v. Telephone Co., 157 N. C. 21, 72 S. E. 619, 39 L. R. A. (N. S.) 651, Ann. Cas. 1913B, 1117; Cumberland Telephone & Telegraph Co. v. Jackson, 95 Miss. 79, 48 South. 614; Ives v. Humphreys, 1 E. D. Smith (N. Y.) 196, 202, 203.

In Balt. & Potomac Ry. Co. v. Fifth Bap. Church, 108 U. S. 317, 329, 2 Sup. Ct. 719, 726 (27 L. Ed. 739) the court dealt with damages resulting from a nuisance which annoyed and disturbed the plaintiff. It said:

"'For such annoyance and discomfort the courts of law will afford redress by giving damages against the wrongdoer * * * "

—and concluded its opinion thus:

"As with a blow on the face, there may be no arithmetical rule for the estimate of damages. There is, however, an injury, the extent of which the jury may measure."

The appellee seeks to distinguish the Hobart, Carmichael, and Jackson Cases on the ground that they involved residence and not business telephones. But why should the rule with respect to business telephones be different from that relating to residence telephones. In each case the right to recover a proportionate part of the rent paid must be admitted. In each the inconvenience and annoyance which would naturally result from a breach of the contract must have been within the contemplation of the parties at the time the contract was entered into. If the householder is entitled to have a monetary value placed by the jury upon his annoyance and inconvenience, why has not the business man the same right? We think he has, and we perceive nothing either in reason or in the adjudged cases which would warrant a contrary holding.

The amount of damages properly recoverable in the case before us may not be large; but, however this may be, we are convinced that where a public service corporation, like the appellee, breaches its duty to a patron by wrongfully depriving him of its service, it must respond in adequate damages for the inconvenience, annoyance, and loss of time resulting from such breach.

The judgment is reversed, at the cost of the appellee, and the case remanded for a new trial in harmony with the views expressed in this opinion.

Reversed.