can no longer be held bound by any of its stipulations, including those relating to representations or guaranties which induced its execution. U. S. Gypsum Co. v. Shields (Civ. App.) 106 S. W. 726; Id., 101 Tex. 473, 108 S. W. 1165; Hackney Mfg. Co. v. Celum. (Civ. App.) 189 S. W. 990, and (Com. App.) 221 S. W. 577; Threshing Mach. Co. v. Webb (Civ. App.) 181 S. W. 855; Landfried v. Milam (Civ. App.) 214 S. W. 848; Scale Co. v. Milling Co., 217 S. W. 200.

[4] The opinion of Chief Justice Gaines in Rapid Transit Ry. Co. v. Smith, 98 Tex. 555, 86 S. W. 322. sharply contrasts the purposes for which parol evidence may be admissible or inadmissible in such a case as this. The railway company pleaded a release as a defense to Smith's action for damages for a personal injury; the release reciting that it was executed in consideration of $15 and the assumption of a certain doctor's bill. In avoidance of the plea, the plaintiff replied that the release was procured by fraud in that its execution was induced by a promise of the railway company by its agent to employ plaintiff as a motorman, knowing at the time that he could not be so employed, such promise made with the intent to defraud plaintiff. Plaintiff also pleaded that there was no consideration for the release save the promise of re-employment, and hence there was a failure of consideration. The charge of the trial court was to find for plaintiff if the railway company by its agent made the promise of re-employment. The charge was held erroneous, the court saying with reference to the release:

"Being a written contract, containing the recital of the payment of one sum and the promise to pay another as a consideration, it was not subject to be varied or contradicted by parol evidence. It was not susceptible of having imported into it by parol testimony that there was an additional agreement that the company was to give the plaintiff employment as a motorman, and that upon its failure to do so the release should be void. East Line & R. R. Ry. Co. v. Garrett, 52 Tex. 133. On the other hand, if the agent of the company, as an inducement to the execution of the release, promised the plaintiff and induced him to believe that if he would execute the release he would get employment from the company as a motorman. and if such promise was not made in good faith, that is to say, if such agent had no intention of giving him such employment, then, under the rule established in this court, the release was voidable and subject to be set aside for fraud."

Judge Gaines' opinion is a good illustration that the parol evidence rule applies to prevent varying or changing the terms of a valid written instrument, but that the rule does not operate to prevent the admission of parol evidence to establish that a written instrument is vitiated or rendered voidable by fraud. History Co. v. Flint, 4 Willson Civ. Cas. Ct. App. § 224, 15 S. W. 912; 1 Greenleaf on Evidence (16th Ed.) §§ 275, 284.

The evidence relating to the representation or promise of appellant's agent to issue and to furnish to appellee the supplements for the period alleged was admissible in support of appellee's plea of fraud, and we therefore answer "No" to the first certified question.

[5] The declarations of appellant's collectors were not shown to be within the actual or apparent scope of their agency. Appellant's objections to their admission in evidence should have been sustained in the trial court. The declarations seem to have been material on the single issue as to whether appellant intended to perform its alleged fraudulent representation or promise. In view of the testimony of appellant's treasurer, intrusted with the sale of its books, to the effect that appellant sold the 32 volumes of the Encyclopædia and the first four supplements as a complete set, which it never supposed would be kept up by any definite or indefinite issue of supplements, no other conclusion would have been warranted than that the representation or promise, if any, to issue and deliver annual supplements for 15 years or so long as appellee might live or practice law was made by appellant, through its agent, without any intention of fulfilling it. The action of the trial court in admitting evidence of the collectors' declarations was therefore harmless error. We answer to the second question that the Court of Civil Appeals did not err in refusing to reverse the trial court's judgment for the erroneous, but harmless, admission of this evidence.

---

## SOUTHWESTERN TELEGRAPH & TELEPHONE CO. v. RIGGS. (No. 245–3440.)

(Commission of Appeals of Texas, Section A. Nov. 30, 1921.)

1. Telegraphs and telephones ⚖➡67(1)—Annoyance and inconvenience elements of damages for disconnecting.

Annoyance and inconvenience, if suffered, are proper elements of actual damages for the breach for telephone service by an unwarranted discontinuance of such service.

2. Appeal and error ⚖➡1094(2) — Finding of jury approved by Court of Civil Appeals is final.

Where the finding of a jury on an issue of fact has been approved by the Court of Civil Appeals, the action of the Court of Civil Appeals is final, and not reviewable by the Supreme Court.

Error to Court of Civil Appeals of First Supreme Judicial District.

---

⚖➡For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Suit by H. P. Riggs against the Southwestern Telegraph & Telephone Company. Judgment for plaintiff was affirmed by the Court of Civil Appeals (216 S. W. 403), and defendant brings error. Affirmed.

John Charles Harris, of Houston (Jas. D. Frank, of Dallas, of counsel), for plaintiff in error.

Ellis P. Collins, of New York City, and S. H. Brashear and H. P. Riggs, both of Houston, for defendant in error.

GALLAGHER, J. Plaintiff in error, Southwestern Telegraph & Telephone Company, operated the only telephone system in Houston. When a telephone was installed it required the subscriber to sign a written contract for a year, and pay two months' rental in advance. Defendant in error, H. P. Riggs, signed such a contract for a telephone in his residence and paid in advance the rental for two months from July 12, 1917. This contract was accepted by the company, and the telephone installed.

The company kept its accounts with its subscribers by numbers only, and through some mistake the money paid by Riggs was credited to another number, leaving his telephone number apparently delinquent. About 8 o'clock on the morning of August 8, 1917, Riggs called his residence and was informed that his phone had been "temporarily disconnected." This explanation meant, and was generally known to mean, that the subscriber was in default in paying rental. The operator referred Riggs to the cashier, who inquired if he had paid his telephone bill. Riggs told the cashier that he ought to know, and asked if they did not keep a record of such matters. The cashier referred to his books and told Riggs that they showed that he owed $3.25. Riggs told him that the record was wrong; that the phone had been installed less than a month; that he had paid two months' rental in advance and had a receipt for such payment. The cashier suggested that Riggs bring his receipt to the office of the company. Riggs told him that he was very busy and could not bring the receipt to the office of the company, and that it was important that he be allowed to talk to his wife at his residence at once. The cashier declined to do anything until Riggs should bring his receipt and exhibit it at the company's office, and stated that they would not connect his phone until he did so. Riggs again insisted on being allowed to talk to his wife at his residence, and again advised the cashier that the matter was very important. The cashier retorted, "Well, you cannot talk until you get your phone paid."

Riggs still insisted that he had paid for his phone, and stated that he would talk to his wife or there would be something doing at the courthouse. The cashier replied, "Is that so," and laughed at him.

Riggs testified that it ruffled his feelings because the cashier spoke so sarcastically and cold-blooded. Within three to five minutes Riggs called his residence again, and was again informed that his phone had been "temporarily disconnected," and the operator offered to again refer him to the cashier. Riggs again insisted upon talking to his residence, and the operator again told him that he could not do so. This irritated Riggs. The operator then connected him with the manager's office. The clerk in that office, upon being informed of the contention, inquired if he would expect to be connected if he had not paid his bill, and, being informed by Riggs that he had paid his bill and had told the cashier so, told him to come down to the company's office and bring his receipted bill. In about 30 minutes Riggs called his residence from another number and was informed that the phone was "temporarily disconnected." The treatment Riggs received made him angry, but the principal effect on him was that he felt it was an insult to him to be told he had not paid his bill, when he had paid it, and assured the employés of the company that he had done so. He had always had an ambition to be a man of unquestioned integrity and wanted every one to know that he had sound moral principles and character, and he felt that the fact that the company was telling all who might call his phone, in effect, that he had not paid his bill would hurt his reputation. All this ruffled his feelings and hurt him very much.

The company did inform one lady who called Riggs' residence that the phone was "temporarily disconnected."

It was customary, when a subscriber claimed his bill was paid, to give him the connection asked for and to investigate afterwards. No explanation why such course was not pursued in this case was made. The company began an investigation of the matter and soon discovered its error, and in about one hour after Riggs first called his residence reconnected his phone. It had been, in fact, disconnected since some time the day before.

The company tendered in court the sum of 20 cents as the pro rata part of monthly rental accruing while his phone was disconnected, and also tendered costs accrued to the date of tender.

The case was tried by a jury, which returned a verdict that Riggs suffered annoyance and inconvenience by reason of his telephone being disconnected, and that $250 would compensate him for such annoyance and inconvenience. Judgment was rendered in his favor against the company on such verdict. A majority of the Court of Civil

Appeals affirmed this judgment. 216 S. W. 403.

Plaintiff in error requested the court to charge the jury peremptorily to return a verdict in its favor, except as to the 20 cents tendered in court. The refusal of the court to so charge the jury is assigned as error. This assignment is based on the contention that the proper measure of actual damages for breach of contract to furnish telephone service is compensation for the pecuniary loss sustained, and that defendant in error could in no event recover more than 20 cents, the proportionate rental for the time his phone was disconnected, no other pecuniary loss having been shown.

The question of the proper measure of damages in such cases was before the Court of Civil Appeals for the District of Columbia in the case of Sommerville v. Chesapeake & Potomac Tel. & Tel. Co., reported in 49 App. D. C. 3, 258 Fed. 147, 149, and in which case certiorari was refused by the Supreme Court of the United States. 250 U. S. 661, 40 Sup. Ct. 10, 63 L. Ed. 1195.

The telephone company contended in that case that Sommerville was delinquent and cut off his service for one day. The issue of delinquency was submitted to the jury and found against the company. There was no proof of pecuniary loss, other than one day's proportionate part of the monthly rental of $3.25, and the court instructed the jury that such proportionate part of such rental was the measure of his damages, and verdict was rendered accordingly. We quote from the opinion of the court in that case as follows:

"But we think that Sommerville is entitled to more than a proportionate part of the $3.25. While the inconvenience which he suffered was for a short period of time, the same principle must apply as if it was for a month or more. It does not seem reasonable that in these days, when a telephone is an indispensable adjunct to every line of business, the inevitable inconvenience, annoyance, and loss of time caused to a subscriber by the wrongful action of the company in cutting off his service without notice should not be regarded as a proper subject for compensatory damages. To prove that one lost a certain number of dollars by reason of the company's action might be very difficult, and yet, we think, all reasonable men would say that he was injured thereby. That the company may for just cause, such as the failure to pay his bills when the same become due, refuse to further serve a patron, we may concede (Southwestern Telephone & Telegraph Co. v. Danaher, 238 U. S. 489, 35 Sup. Ct. 886, 59 L. Ed. 1419, L. R. A. 1916A, 1208); but, when the company takes such action, it must know at its peril that it has a valid reason for doing so. Here, according to the verdict of the jury, it was wholly without justification.

"Nor is authority wanting for the proposition that the company must respond in damages for its action in a case like this. 'The damage sustained by the loss of a telephone in its very nature is largely composed of inconvenience and annoyance. That a person deprived of the use of the telephone is materially damaged, all will concede. What is the amount of damage in dollars and cents cannot be accurately stated by the party suing, for the reason that his damage consists not only in pecuniary losses; but it consists in inconvenience, discomfort, and an annoyance, and it must be left to the jury to determine what is the damage sustained, taking into consideration the discomfort, the annoyance, and inconvenience suffered, together with actual and pecuniary losses.' Telephone Co. v. Hobart, 89 Miss. 252, 262, 263, 42 South. 349, 351, 119 Am. St. Rep. 702.

"In Shepard v. Milwaukee Gaslight Co., 15 Wis. 349, 82 Am. Dec. 679, a case in which the defendant refused to furnish gas to the plaintiff, the court said: 'The "inconvenience and annoyance" occasioned directly by the wrongful act or refusal of the defendant are always legitimate items in estimating the damages in actions of this kind.' "

The same contention as to measure of damages made by plaintiff in error in this case was made in the case of Carmichael v. Southern Bell Telephone & Telegraph Co., reported in 157 N. C. 21, 72 S. E. 619, 39 L. R. A. (N. S.) 651, 654, Ann. Cas. 1913B, 1117, and was disposed of as follows:

"So in contracts for telephone service for household purposes pecuniary values are not ordinarily in contemplation, and on breach, even when the action is simply for breach of contract, a different standard of adjustment must necessarily or may properly be adopted, to wit, a fair compensation for the loss and for the inconvenience and annoyance in being wrongfully deprived of the service stipulated for. Cumberland Teleg. & Teleph. Co. v. Hobart, 89 Miss. 252, 119 Am. St. Rep. 702, 42 So. 349; Hale, Damages, p. 102."

[1] We therefore hold that annoyance and inconvenience, if suffered, are proper elements of actual damages for the breach of a contract for telephone service by an unwarranted discontinuance of such service. Sommerville v. Chesapeake & Potomac Telephone Co., supra; Carmichael v. Southern Bell Tel. & Tel. Co., supra; Cumberland Tel. & Tel. Co. v. Hobart, 89 Miss. 252, 42 South. 349, 351, 119 Am. St. Rep. 702; Cumberland Tel. & Tel. Co. v. Jackson, 95 Miss. 79, 48 South. 614, 615.

Plaintiff in error further contends that the finding of the jury that defendant in error suffered annoyance and inconvenience as the result of its action in disconnecting his phone and refusing to permit him to talk to his wife is without support in the evidence.

The facts heretofore recited show that defendant in error was thereby denied the right to talk to his wife on important business; that he spent a half hour trying to get the company to correct its mistake and restore service; that he was greatly humiliated by the refusal of the company to accept his assurance that he had, in fact, paid the rental on his phone, and by the fact that the opera-

tor reported to parties calling for his residence that his phone was "temporarily disconnected," which was known to mean that his service was cut off for nonpayment of his bill; and that he was irritated and angered by the sarcastic and cold-blooded manner in which the employés of plaintiff in error spoke to him, and treated him.

[2] Inconvenience and annoyance are the reasonable and probable, if not the necessary, consequences of the facts so shown. The jury so found, and the Court of Civil Appeals approved its finding. The action of the Court of Civil Appeals in the premises is final, and not subject to review by this court.

We recommend that the judgment of the Court of Civil Appeals be affirmed.

GREENWOOD and PIERSON, JJ. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.