WASHINGTON GARAGE COMPANY, Incorporated, a corporation, Appellant,

v.

Herman H. KLARE, Jr., and Margaret A. Klare, Appellees.

Karl BURNS, Appellant,

v.

Herman H. KLARE, Jr., and Margaret A. Klare, Appellees.

Nos. 4232, 4233.

District of Columbia Court of Appeals.

Argued June 24, 1968.

Decided Dec. 18, 1968.

---

7. Although we do not discuss other challenges to appellant's convictions, we have examined them all and find no error.

John G. Davies, with whom William H. Deck, Washington, D. C., was on the brief, for appellant Washington Garage Company, Inc.

Robert T. Smith, Washington, D. C., for appellant Karl Burns.

Daniel Webster Coon, Washington, D. C., for appellees. Michael L. Slive, Washington, D. C., entered an appearance for appellees.

Before MYERS, KELLY and FICKLING, Associate Judges.

KELLY, Associate Judge.

In these appeals from judgments for each appellee of both compensatory and punitive damages, appellant Washington Garage Company, Inc., challenges the award of punitive damages and appellant Burns challenges the award of both. Our reversal of the judgments for punitive damages only requires a detailed recital of the facts.

On December 23, 1965, appellee Herman H. Klare, Jr., co-plaintiff below with his wife, deposited a blue 1963 Volkswagen sedan titled in his wife's name with agents of appellant Washington Garage Company, Inc., for parking on their lot. After surrendering the car to Cicero, the attendant on duty, at 3:45 P.M., Klare was given a claim check for the car and he and his sons went Christmas shopping.

Later, about 5:00 P.M., appellant Karl Burns arrived on the lot with one George Feidler. Both were employed nearby and had been attending an office Christmas party for about two hours before their arrival at the parking lot. Burns was intoxicated and Feidler was helping him across the street to the lot where both Burns and Feidler had parked. Burns was using a blue Volkswagen sedan borrowed from a friend named Anderson.

Feidler's brother, who was also with them, was dispatched to obtain some coffee. Burns and Feidler entered the lot where Burns was seen to stagger and fall by Cicero. Burns then walked directly to a blue Volkswagen parked in a group of about three other Volkswagens, opened the door, turned on the headlights, started the car, but was unable to drive the car because the emergency brake was on. Cicero appeared and agreed with Feidler that Burns was too intoxicated to drive. There is some dispute as to whether a claim check was ever demanded of Burns, but in any case Cicero allowed Feidler to pay the parking fee and to drive the Volkswagen out of the lot with Burns in it without obtaining a claim check for the car or having a receipt signed for it. Cicero had known Feidler and his brother for many years as regular customers and let them take the car on the strength of his knowledge of Feidler. No one realized at this time that the Volkswagen was really Klare's and not Anderson's, both of which were blue sedans.

Feidler, driving the Volkswagen with Burns in it, and with his brother following in the Feidler car, drove to a car wash where the Feidler car was washed in preparation for a trip to Pennsylvania. Feidler called Anderson from the car wash and explained the situation. Anderson agreed to come to the car wash as soon as he could to pick up Burns and his car, bringing an extra set of keys with him. Feidler then locked Burns, who had apparently passed out, in the Volkswagen and took the keys with him. Leaving the Volkswagen and Burns behind, Feidler and his brother left for Pennsylvania and did not return until Monday, December 27th.

Meanwhile, when Klare returned to the parking lot at 5:45 P.M. and presented his claim check to Cicero it was then discovered that the car was not on the lot. Cicero refused to return the claim check or the money Klare had paid, although by comparing the numbers on the claim checks in the office it became apparent to Cicero what had happened. He reported to Mr. Arrington, the manager then on duty, that he had given the car to the wrong person and told the manager who it was. Klare was not told who had the car but he, too,

became aware of what had happened. Klare called the police who came and spoke with him. Cicero, and a manager named Washabaugh who was then on duty, Arrington having left. The testimony of record as to what transpired between Klare and the employees and agents of the Garage Company is conflicting but we will accept the view most favorable to Klare for the purpose of determining whether the award of punitive damages was error. Thus viewed, Klare was never told the name of the man to whom the car was given, never heard telephone calls being made to locate the man or to locate the other owners of the Volkswagens parked on the lot, did not receive the return of his money or the offer of a ride home, and was told the only thing to do was to call the police. Klare was eventually picked up by another son driving one of the remaining four operable family cars.

Meanwhile Burns had awakened at approximately 10:00 P.M. of the same night and finding himself locked in the wrong car, had left the car where it was, returned to the parking lot, surrendered the appropriate claim check and recovered Anderson's car. Burns did not inform anyone at the lot about the unknown car in which he had found himself nor did any agent of the garage question him about the missing Klare automobile.

Anderson had later gone to the car wash where he found the blue Volkswagen there was not his and that Burns was not in it. He then went to the parking lot, but Burns had already left with his car so he returned home.

During the following days Klare called the Garage on numerous occasions. He also attempted, without success, to contact the owner and president of the Garage Company, both at the office and at home. The Garage never contacted him. It was always he who had called them. On December 24th, Christmas Eve, he was told the

location of his car by Mr. Washabaugh, but decided not to act on the information. The situation eventually deteriorated to a point where the Garage concededly took the attitude that the missing car was not their problem, that in such a situation the Garage was authorized to do nothing except call the police,[1] that Klare could sue the Garage's insurance company if he liked, but that they were fed up with the matter.

On Monday, December 27th, Feidler, upon inquiry, was informed by the Garage Company of the status of the matter. He talked with Klare and it was agreed that Burns would return the car. Burns, who was completely unaware of all that had transpired, was informed of the situation by Feidler. Burns took leave from work and returned the car washed and with a full tank of gas, to Klare.

On the basis of these facts the trial court assessed compensatory damages of $100 and punitive damages of $300 against each appellant in favor of each appellee. We hold the award of punitive damages was error.

As we said in District Motor Co. v. Rodill, D.C.Mun.App., 88 A.2d 489, 494 (1952), the law is that

[P]unitive damages may be awarded against the principal for acts of its agents where the principal participated in the wrongful acts, expressly or impliedly by his conduct authorizing it or approving it, either before or after it was committed.

In awarding damages against appellant Washington Garage Company, Inc., the trial court relied upon Wardman-Justice Motors, Inc. v. Petrie, 59 App.D.C. 262, 39 F.2d 512 (1930). But there is no evidence in this case, as there was in *Wardman-Justice,* that any officer of the corporation either authorized or ratified the acts of its employees. The testimony is that Klare tried to talk with the president of the company at the office and also called him at home on Christmas Day and was told that

---

1. The police with whom Klare spoke on the telephone took a different view though and told him that it was a civil matter.

he could not be disturbed. This testimony tends to show lack of knowledge of the incident by the president or other officers of the company and, in our judgment, authorization or ratification by the corporation cannot reasonably be inferred from the other facts in the case. Moreover, even assuming ratification the combined circumstances of this case do not support an award of punitive damages against the Garage Company. The grounds for the imposition of punitive damages are "wantonness, oppressiveness, maliciousness, recklessness, gross fraud, gross negligence, a spirit of mischief, or criminal indifference to civil obligations." District Motor Co. v. Rodill, supra, 88 A.2d at 493.[2] For Cicero to allow Feidler to drive off with Klare's car was certainly negligent, yet it was not grossly so, nor was it a wanton, willful, or malicious act. The attendant, as well as Feidler, was under the belief that the right person was taking the right car at that time. And while the subsequent conduct of the Garage employees might be considered rude and discourteous, again it cannot be characterized as wanton, malicious, or as criminal indifference to civil obligations.

■ As to appellant Burns, the facts show that at most his conduct was negligent. In our opinion his voluntary intoxication does not excuse his negligent acts,[3] but the very fact that he was intoxicated does not change a careless act into willful, malicious and deliberate taking of the wrong car from among several of the same make and color. Furthermore, it was Feidler who actually drove off with the car and left it, with Burns in it, on the street, and it is precisely because Burns was intoxicated that he did not know how he had gotten in the wrong car when he awoke. He simply was not aware that he had taken someone else's car and could not have abandoned it in utter disregard of the rights of the owner.

■ We hold that the evidence supports a finding of compensatory damages against appellants; however, as we do not find in this case circumstances of extreme aggravation justifying the award of punitive damages, the

Judgments for compensatory damages are affirmed.

Judgments for punitive damages are reversed.

2. See also Lake Shore & M. S. Ry. Co. v. Prentice, 147 U.S. 101, 108, 13 S.Ct. 261, 37 L.Ed. 97 (1893); Brown v. Coates, 102 U.S.App.D.C. 300, 253 F.2d 36, 67 A.L.R.2d 943 (1958); Sommerville v. Chesapeake & Potomac Tel. Co., 49 App. D.C. 3, 258 F. 147, cert. denied, 250 U.S. 661, 40 S.Ct. 10, 63 L.Ed. 1195 (1919); Darrin v. Capital Transit Co., D.C.Mun. App., 90 A.2d 823 (1952).

3. See Prosser, Law of Torts 157 (3d ed. 1964); accord, Germ v. City and County of San Francisco, 99 Cal.App.2d 404, 222 P.2d 122, 129 (1950); McMichael v. Pennsylvania R.R., 331 Pa. 584, 1 A.2d 242 (1938).