CUMBERLAND TELEGRAPH AND TELEPHONE COMPANY *v.* J. H. HOBART.

[42 South. Rep., 349.]

1. TELEPHONE COMPANIES. *Services. Duty to furnish. Payment of arrears. Reinstatement.*

> If a telephone company cuts out a subscriber for failure to pay the charges for his telephone, it is obliged to reinstate him upon tender of the sum properly due, and cannot demand as a condition of reinstatement that he pay a sum due the company by his wife on another contract.

2. SAME. *Damages.*

> Where a telephone company wrongfully cuts out a subscriber and refuses to reinstate him, it is liable not only for actual damages, but for inconvenience and annoyance occasioned by being without the use of a telephone.

3. SAME. *Sum not excessive.*

> In such case a verdict and judgment for one hundred and fifty dollars in plaintiff's favor is not excessive.

FROM the circuit court of Warren county.

HON. JOHN N. BUSH, Judge.

Hobart, the appellee, was plaintiff in the court below; the telephone company, the appellant, was defendant there. From a judgment in plaintiff's favor the defendant appealed to the supreme court.

Hobart sued the Cumberland Telephone and Telegraph Company for damages resulting from its discontinuance to him of telephone service, plaintiff charging that the defendant wrongfully denied him the right of having a telephone in his dwelling house; that although by inadvertence he had been temporarily delinquent in paying rent for the telephone, he had thereafter tendered appellant company the requisite sum for resumption of services, but defendant persisted in its denial of plaintiff's

right. The chief defense of the company was based on the fact that there was due by appellee several months' rent for a telephone in a store belonging to Mrs. Hobart, wife of appellee, under a written contract which, while in her name, was actually made with the appellee; and defendant claimed that until payment of this amount it was not obligated to give plaintiff a telephone in his residence. The jury found for plaintiff, awarding him $150. Other facts are stated in the opinion of the court.

*Smith, Hirsh & Landau,* for appellant.

The court erred in refusing to admit testimony to show that the contract for the telephone in the store, signed in the name of Mrs. Hobart, was taken by mistake to be signed by the plaintiff; for a mistake in respect to a contract destroys the assent of the party making such mistake, and renders the contract voidable by him. And this was a mistake which prevented assent of parties. To create a contract it is essential that both of the parties should agree on the same thing in the same sense. 20 Am. & Eng. Ency. Law, 811. If the testimony of the manager of the appellant company was true, then no contract had ever been made with Mrs. Hobart, but it was with her husband, the appellee; for the manager thought he was making contract with the husband, and such understanding was fortified by subsequent conversation with appellee wherein he said the contract for the store was all right.

After appellee became in default for the June, 1905, bill for his residence telephone, the appellant had a right to refuse to continue telephone connection with his residence until both the residence and the store bills were paid. It would be unreasonable and a hardship to compel appellant to reinstate telephone service with plaintiff's residence while the store telephone bill remained unpaid.

The case of *Burke* v. *Water Valley,* 87 Miss., 732 (40 South. Rep., 821), cited by appellee, does not decide the question here involved, for the appellant did not cut off the telephone service

from appellee's home because of failure to pay the store bill, but because of failure by appellee to pay the residence bill for June. Appellee never denied the correctness of the store telephone bill. He merely sought to repudiate the payment of a just bill because the manager of the appellant company, through mistake, accepted a contract signed by the wife of appellee, when he intended to accept a contract with the appellee himself, and the manager did not discover the mistake until this suit was instituted. Nor is *Wood* v. *City of Auburn,* 29 L. R. A., 376, cited by appellee, in point. That was a case where the city of Auburn sought to "summarily deprive Wood of water, an instant and constant necessity, in order to coerce him into a surrender of his position of defense against an old bill."

While public service corporations are justly subject to heavy and onerous duties, which should be strictly enforced for public policy, yet this case is one where affirmance would result in putting a premium on dishonesty.

Moreover, the verdict was excessive, for the utmost that appellee should have recovered in any instance was $20, or thereabouts, paid out to messengers during the time the telephone service was refused. All other items of expense claimed, such as arising at night to go to a neighbor's home to answer long distance calls, should have been ruled out. A party cannot exaggerate and increase his damages when reasonable effort on his part would have operated to decrease them. If through negligence or wilfulness he allows damages to be unnecessarily enhanced, the increased loss must fall upon him. *Vicksburg & Meridian Railroad Company* v. *Ragsdale,* 49 Miss., 459.

*Bryson & Dabney,* for appellee.

Putting this case most favorably for the appellant company, did it have the right to refuse appellee service in order to coerce him into paying a bill he owed for another telephone installed in another building, under a different contract? Has a public service corporation authority to enforce collection of past due

bills in its favor by refusing service in the future? So far as we can ascertain, such authority has never been asserted by hotels, railroad companies or other public servants, except telephone, gas and water companies; and in every instance where the matter has been adjudicated the courts have held that no such authority exists. The case of *Gaslight Company* v. *Colliday,* 25 Md., 1, is in point. There the gas company refused to furnish gas to a consumer at one place of business because he owed a bill for gas furnished at other premises formerly used by him. It was held that the company had no right to enforce collection of past due bills that way. The cases of *Lloyd* v. *Washington Gas Light Company,* 1 Mackey (D. C.), 331, and *New Orleans Gas Light Company* v. *Paulding,* 12 Rob. (La.), 378, are to the same effect. In the case of *Wood* v. *City of Auburn,* 87 Me., 287 (29 L. R. A., 377; 32 Atl. Rep., 908), which appears to be the leading case on the subject, an injunction was sustained restraining a water company from cutting off their water supply from consumers in an attempt to coerce payment of a disputed bill. Appellant, as a public servant, was bound to serve appellee on application and compliance with reasonable rules. *Jackson Electric Railroad Company* v. *Lowry,* 79 Miss., 431 (30 South. Rep., 634); *Charleston Natural Gas Company* v. *Lowe,* 52 W. Va., 671; *Coy* v. *Indianapolis,* 36 L. R. A., 535. And failing in such duty, appellant became liable to the appellee. *McDonald* v. *Snelling,* 14 Allen, 200; *Hoehle* v. *Alleghany Heating Company,* 5 Pa., Sup. Ct., 21.

Our investigations have shown us a few cases in Pennsylvania and Georgia where the courts have held that public servants might discontinue service until past due accounts arising from other contracts in regard to separate matters should be settled, but in every case decision was based solely upon statute.

From the authorities above set forth we submit that it was immaterial whether the contract for the telephone in the store

was made by Hobart, appellee, or his wife, and whether the $3.10 item was due by him or her. When appellee tendered payment for future services the company was bound to render the service, regardless of what debt he or his wife may have owned for past due accounts, and whether such indebtedness was because of the telephone in his house or some other place.

The only question at issue is the reasonableness of the rule regarding payment of past due accounts as a prerequisite to reinstatement of service which had been discontinued. We think this right of action for such refusal is clearly sustained by the decision of this court in *Burke* v. *Water Valley, supra,* 87 Miss., 732 (40 South. Rep., 821), wherein WHITFIELD, C. J., stated that if gas is supplied to the owner of different houses, under separate contracts, failure to pay the gas bill on one house does not authorize the cutting off of the gas from the other.

As to measure of damages, we content ourselves by merely citing the cases of *McDonald* v. *Snelling,* 14 Allen, 290 (quoted in Sutherland on Damages [3d ed.], sec. 675) ; *Shepard* v. *Milwaukee Gas Company,* 15 Wis., 318 (82 Am. Dec., 681), and *Ives* v. *Humphreys,* 1 E. D. Smith (N. Y.), 201. Plaintiff was entitled to, and did, recover damages for inconvenience and annoyance as well as for repayment of expenditures actually made by him; and the ascertainment of all such was properly for the jury.

MAYES, J., delivered the opinion of the court.

Hobart sued the Cumberland Telegraph and Telephone Company for the sum of $2,000 damages for wrongfully cutting out his telephone. The facts in the case are as follows: Hobart resided about a mile and a half from Vicksburg, on what is known as the "Warrenton Road." He had entered into a contract for a telephone to be put into his residence some years previous to the date at which this suit was brought, and subsequently, his wife having a store, he saw the manager of the telephone company, and asked him to place a telephone in this store,

which the company did.  At the time the company's servants
went out to place the telephone in the storehouse of his wife,
Hobart himself was not present, and the telephone company,
presenting a contract to be signed, the clerk in the store signed
it in the name of Mrs. Hobart, so that the telephone company
had a contract with Hobart for the telephone in his residence,
and a contract with Mrs. Hobart, signed for her by the clerk,
for the telephone in the store.  It is stated in the testimony that
the telephone company believed that the contract was signed
by Hobart, he having spoken to the company about it, and that
the charge for rent of the telephone in the store was placed on the
books to Hobart, though the written contract was in the name
of his wife, so far as the store was concerned.   About a
month after the telephone had been placed in the store,
Mrs. Hobart sold the store, and Hobart states that, when
the store was sold, he notified the telephone company to take
the telephone out of the store.  Some time in July, 1905, Hobart
was away from home four or five days on his plantation in
Louisiana, and returning about the 15th or 16th, he found his
residence telephone cut out.  He rang up the company's office and
asked what was the matter, and appellant told him he was cut
out, and the party that answered the telephone said "they knew
all about him, and that his telephone would not be put back on
the line."  Hobart had not paid rental for his telephone for the
month of June, and on the 15th or 16th of July he was cut
out.  It also seems that there was some $3.10 due on the con-
tract of Mrs. Hobart for the telephone in the store.  The next
morning Hobart went into Vicksburg and into the manager's
office of the telephone company, tendered his rental for the month
of June, and asked to be put back on the line. This the manager
declined to do because the company claimed he owed $3.10 on
the store telephone.  Hobart told them that he did not owe for
the telephone in the store, that it was his wife's contract; the
store belonged to her, and if she owed anything to present her

the bill. He tendered to them the $2 for the rental for the month of June due by himself on his residence telephone, and $2 in advance for the next month, and requested reinstatement of the service, but the company declined to accept it because he would not pay the full amount, as it claimed; that is to say, both under his wife's contract and his own, so that when it declined to reinstate his telephone it had full knowledge that the $3.10 was the debt of Mrs. Hobart. Appellant sent out a lineman, and cut out the telephone, and removed it from Hobart's residence. Hobart says that when they came to remove the 'phone he tendered them $6, paying in advance for the residence telephone, which they declined to accept. He was without a telephone for three or four months, under these circumstances. Hobart claims to have been damaged in many ways by the removal of the telephone, but that it is difficult to enumerate the exact amount, and the ways in which he was damaged. That he lived out in the country, and that it was an almost indispensable adjunct to his household, and yet difficult to enumerate in dollars and cents; that when he was in town and wanted anything, he could telephone. When he wanted to send things home, he was in the habit of putting them on the car and telephoning some one at the house to meet the car and get the things; that after the telephone was cut out he could not do this, but had to send a boy; that he suffered inconvenience and annoyance in ways too numerous to name, and too difficult to put in dollars and cents, and that the telephone was a necessity to him. He used the telephone on his place in Louisiana, and he used it as a matter of convenience to talk with his home. While he was without the telephone he was taken sick, and suffered great annoyance and inconvenience in not having a telephone in his house; that, to his recollection, he spent $25 to $30 for messengers to send things home; that when he had long distance calls several times, he would have to go out at night to his neighbor's house to talk, and when his family was sick he was

put to much inconvenience, and deprived of the protection ✓
which the telephone gave him at his house.    The case was
submitted to the jury on these facts, and they awarded damage
in the sum of $150.    The record clearly shows that there were
two distinct contracts, one by Hobart for the telephone in his
dwelling, and another contract in the name of Mrs. Hobart for
the telephone in her store.

It is attempted to be shown that the telephone company
thought it was making the contract at the store with Hobart,
instead of Mrs. Hobart, but that can make no difference in the
decision of this case, for the reason that the contracts were sepa-
rate contracts relating to different properties, and, again, appel-
lant was informed that it was Mrs. Hobart's contract after appel-
lant had cut out the residence, and, again, the personnel of the
party contracted with could make no difference, for the reason
that it was bound to put in the telephone in the store at the
request of either Mr. or Mrs. Hobart.    These contracts were
separate and independent contracts, having no relation with
each other, and because of the failure to pay charges on one
of the telephones, the telephone company had no right to cut
out the other. .  In the first place, they were contracts between
different parties; in the next place, if this were not true, they
were separate contracts about different properties, and the tele-
phone company could only cut out that telephone for which there
had been a default in payment.    At the time that Hobart's tele-
phone was cut out, he was in default on his residence, and the
telephone company had the right to cut him out, after due notice
to him, but when he tendered the money properly due on the
telephone in his dwelling, it had no right to undertake to
coerce payment of the amount due on the other telephone by
refusing to reinstate the service in his house. In the first place,
he did not owe it; it was his wife's debt.    And in the next
place, if he had owed it, it was a separate contract, and appellant
could only put an end to the particular contract wherein there

was default. In the case of *Burke* v. *City of Water Valley,* 87 Miss., 732 (s. c., 40 South. Rep., 821), Whitfield, C. J., says: "If gas is supplied to the owner of different houses under separate contracts, failure to pay the gas bill on one house does not authorize the cutting off of the gas from the other." *Gaslight Co.* v. *Colliday,* 25 Md., 1; *Lloyd* v. *Washington Gaslight Co.,* 1 Mackey (D. C.), 331. Gas companies and telephone companies, being public service corporations, are controlled by the same principles of law. It is shown by the testimony that the telephone company was fully notified that the amount of $3.10 was the amount due on Mrs. Hobart's telephone, and for which she was liable; yet, notwithstanding this, it cut out the telephone in the dwelling anyway, which was unwarranted. A telephone company may cut out a subscriber for nonpayment of dues on reasonable notice, when the dues are not actually paid, but when they are paid, or when they are offered to be paid, it acts at its risk in refusing reinstatement of service when requested so to do.

The only other question necessary for us to consider is the question of the amount of damage. The jury in this case allowed the sum of $150, and we cannot say that their judgment was wrong in this matter. The law of damages, and what is proper to be allowed, must largely depend upon the nature of the suit in which damage is sought to be recovered. It was impossible for Hobart to itemize each separate item of damage occasioned him by the removal of his telephone. The difficulty in doing this is manifest to every one. The telephone has come to be a necessity. It is the thing which completes the use of a home. It is resorted to daily, and hourly, to such an extent as to be regarded as indispensable, yet, when it comes to taking pencil and paper and calculating day by day what pecuniary value it possesses, it is almost impossible. The inconvenience, the annoyance, and the trouble of being without one is a damage which no one can accurately estimate. It is such inconvenience

and annoyance as is only to be fully appreciated when one is deprived of its use; its loss is a great and distinct damage, yet such damage as is not susceptible of exact measurement. When the telephone company undertook to cut out the residence telephone because of the nonpayment of rent, Hobart was in default, and it had the right to do it. When appellant declined to reinstate it after having been offered the rental of the telephone in the dwelling house, it was its duty to reinstate it, and not having done so, it should compensate Hobart for his pecuniary loss, and such inconvenience and annoyance in being wrongfully deprived of its use, as the jury thought proper under the facts. We do not say that damage for inconvenience and annoyance may be recovered in all cases, but from the very nature of the subject-matter of this litigation, annoyance and inconvenience is one of the main elements of damages. In the case of *Hewlett* v. *George,* 68 Miss., 703 (9 South. Rep., 885; 13 L. R. A,. 682), this court held that "compensatory damages are not necessarily limited to actual money losses." Again, in the case of *Railway Co.* v. *Bloom,* 71 Miss., 247 (15 South. Rep., 72), the court held that damage for discomfort and inconvenience might properly be considered as compensatory damages.

In the case of *Shepard* v. *Milwaukee Gaslight Co.,* 82 Am. Dec., 681, when the question as to damage was that of compensation merely, the court said: "But it is said that the court erred in the rule of damages. It told the jury that 'the plaintiff, if entitled to a verdict, should have such damages as will compensate him for the pecuniary loss, and also for the inconvenience and annoyance experienced by him in his mercantile business arising out of the defendant's refusal to furnish gas to the plaintiff.' It is claimed that this instruction gave the plaintiff punitive or vindictive damages. But, we think, this is clearly not so. The inconvenience and annoyance occasioned directly by the wrongful act or refusal of the defendant are always legitimate items in estimating the damages in actions

of this kind. Vindictive damages are those which are given over and above all this as punishment for the other party. In actions for a nuisance, the damage usually consists almost entirely in inconvenience and annoyance. So, also, in many other actions of tort. In *Ives* v. *Humphreys*, 1 E. D .Smith (N. Y.) 201, the court says: 'Even if the plaintiff be confined strictly to compensation for the injuries sustained by him, the jury are to determine the extent of the injury, and the equivalent damages, in view of all the circumstances of. injury, insult, invasion of the privacy, and interference with the comfort of the plaintiff and his family.' And again: 'For an involuntary trespass, or a trespass committed under an honest mistake, the damages should be confined to compensation for the injury sustained by the plaintiff, and in estimating the amount of such damages, all of the particulars wherein the plaintiff is aggrieved may be considered, whether pecuniary loss, or pain, or insult, or inconvenience.' " We quote this case with approval as applied to this class of cases. When the telephone company undertakes to cut out its subscribers for debts which it claims to be due it, it may do so if the subscriber actually owes it, but if the subscriber is not indebted to it, it is liable for such actual damage, inconvenience and annoyance as is occasioned him by its wrongfully cutting out his telephone.

The damage sustained by the loss of a telephone in its very nature is largely composed of inconvenience and annoyance. That a person deprived of the use of a telephone is materially damaged, all will concede. What is the amount of damage in dollars and cents cannot be accurately stated by the party suing for the reason that his damage consists not only in pecuniary losses, but it consists in inconvenience, discomfort and an annoyance, and it must be left to the jury to determine what is the damage sustained, taking into consideration the discomfort, the annoyance and inconvenience suffered, together with actual pecuniary losses. Would it be contended if one's gas is wrong-

fully cut off that compensatory damage would be only what it would cost to buy tallow candles? To so hold, and to hold that annoyance, discomfort and inconvenience was not a proper element of damage to be considered by a jury when the services of a telephone has been wrongfully discontinued, would be to place the public at the mercy of the telephone company, and force them to yield to many unjust demands rather than contest, for fear of a discontinuance of the service. Such coercive powers cannot be sanctioned.

We would unhesitatingly set aside a verdict of the jury where the amount allowed was grossly excessive or unreasonable, but we shall be slow to interfere with their judgment when it is not so. The telephone may be considered a necessary household utility, so much so that the thought of losing it will coerce almost any one into payment of any debt claimed within reason rather than have it cut out. It is a public service corporation without competition, monopolistic in nature, and the patrons have no choice but to accept its service, and they have not the privilege of selecting to do business with a competitor, because there is no competitor, and for this reason the rights of the public should be carefully guarded against oppressive methods used for the purpose of collecting unjust demands. The necessities of the law must meet modern conditions.

The action of the telephone company was wrong, and it was not necessary for Mr. Hobart to pay the wrongfully demanded bill for the purpose of retaining the telephone in his dwelling. If he had done this, it would have been necessary for him to sue for the recovery of the amount overpaid, and to require him to do this, in the language of the case of *Wood* v. *Auburn* (Me.), 32 Atl., 908 (29 L. R. A., 377), "would be a violation of the fundamental juristic principle of procedure. That principle is that the claimant, not the defendant, shall resort to judicial process." This case is in perfect accord with the case of *Cumberland Telephone Co.* v. *Baker* (Miss), (37 South, Rep., 1012).

---

---

In that case the telephone company had rendered the service, and the rental was properly due from Mr. Baker, but he claimed an unliquidated amount as damage for poor service, and paid his bill less the amount so claimed by him, whereupon his telephone was discontinued, and the court held that he was not entitled to exemplary damages.

We can find no reversible error in this cause.

*Affirmed.*