Meridian Light & Ry. Co. *v.* Steele.

[83 South. 414, In Banc.   No. 20864.]

1. Electricity. *Contract for payment of arrearages. Void.*

A provision in a contract between an electric light company and a customer by which the customer is required to pay before installation of service, a previously contracted bill for services at another location, is without consideration and void.

2. Electricity. *Electric light company liable for damages for delay in furnishing service.*

An electric light company is liable for actual damages for its delay in furnishing service to a customer because the customer refused to pay for arrearage on account of service at a former residence.

APPEAL from the circuit court of Lauderdale county. HON. R. W. HEIDELBERG, Judge.

Suit by Gertrude Steele against the Meridian Light & R. R. Co. From a judgment for plaintiff, defendant appeals.

The facts are fully stated in the opinion of the court.

*Baskin & Wilbourn,* for appellant.

This case resolves itself simply into a proposition which we think may fairly be stated as follows: Miss Steele applied for service and made a deposit on May 6, 1918. The company found a balance against her on its books for past due service amounting to six dollars and twenty-eight cents and politely desired and requested that this be adjusted before the application for service was granted and the connection actually made. .

Miss Steele did not think she owed the amount and asked for a statement and begun to look up her checks and receipts. Reading the discussion over the liability of the account the expected guest, for whose benefit the lights were desired, gave notice of the exact time of his arrival. Miss Steele's attorney requested the appellant to cut in the light and let the matter of the account be adjusted afterwards. To this the appellant assented and cut in the lights in time for the guest, and appellee has had the benefit of the lights ever since, and has not paid the said balance.

She had been without the lights from voluntary choice for a number of months, and got the lights in time for the special purpose for which they were or: dered, and such loss of time as she endured in looking up the accounts was all due to the company's presentation of the bill against her for six dollars and twenty-eight cents and was only such time as she would have spent in looking the matter up had there been no ques-

tion whatever between her and the appellant as to the cutting in of the lights.

The bill was presented in good faith, and under the honest belief that Miss. Steele owed it; and if the Company is to be penalized with punitive damages or mulcted for any kind of damages because it had the temerity to make polite request for the payment of a bill, then it seems to us there is something vitally wrong in our condition of life. We do not believe that any court on earth ever has or ever will hold that a party who presents an account which he thinks another one owes him, but which in point of fact the other may not have owed him, or may dispute, is liable for damages for the loss of time that the party against whom the account has been presented has sustained in looking up the receipts and checking the account and investigating the question of liability. Nor does it seem to us to comport with justice, nor be in the interest of public policy to permit a recovery for the worry that one gives oneself over the fact that another has in good faith presented for payment an account which the party thinks is not due. A great many of our worries are self imposed. Whether or not one worries over a thing is largely dependent upon oneself.

It does seem to us that a public service corporation has the right to demand payment of an account that it honestly believes is due it, as in this case, and that a sound public policy should protect them in that right. Their property is impressed with a public service. The courts have declared that they are entitled to a fair return on the investment. The result is that performance of the public service must result in enough remuneration to give a fair return upon the investment.

If the company cannot collect its bills because intimidated, and handicapped by the risk of liability to those who may be worried by the presentation of a bill they do not think they owe, then the general public is

damaged by the increased loss in accounts because the public is called on under the law for enough revenues to meet the increased cost and expense of rendering the public service.

Under all the circumstances, we submit, therefore, that the appellant at least had the right to hold up cutting in of the lights until it could have some reasonable understanding about the past due account, and that as soon as the attorney for the appellee made the request that the lights should be cut in for the particular guest, and stated that the matter of the account could be adjusted afterwards, the appellant did cut in the lights. What we have said has been without reference to the terms of the application for the service.

We now desire to call the attention of the court sharply to the agreement contained in the application for the service, and to submit to the court that on the facts that we have heretofore stated, and upon the terms of the agreement, the appellant was within its rights in the premises and violated no right of the appellee, and is not liable to the appellee in any manner, because of what it did in the instant case.

The particular provision in the application for the service to which we refer is as follows: ''I further agree that if I am in arrears with the company for gas or electric service furnished or for pipes, wiring or appliances furnished at the above designated place, or at any other place, or if any member of my household is in arrears, which arrearage accrued while he was such a member of my household, the company shall render me a bill for such arrearage, and if I fail or refuse to pay same on demand; or if I should fail or refuse to comply with any of the foregoing conditions, then the company may remove the meter, sever all connections, either gas or electric, and discontinue the service.''

The foregoing agreement was made beyond dispute. The parties are *sui juris* and the contract is not against public policy; is reasonable and in furtherance of the soundest public policy. Common sense and fair dealing between man and man and the very spirit of the agreement itself, which we have quoted, we submit, made it proper and incumbent upon the appellant to raise the question of the arrearage before cutting in the service.

We would like for the court to pass upon the rights of the appellant under this contract as applied to the facts of this case, because if this particular application for service furnishes no protection in this kind of case to the appellant, and is not reasonable, then the appellant would wish to abandon the use of such application.

If the particular application in question is a valid one, and is reasonable, and lawful, it would be to the interest of the appellant and its customers to have this judicially determined. It is equally important that its invalidity should be judicially declared if it is invalid.

The question is squarely raised by refusal of the court below to grant the appellant instruction No. 7 on page 124 of the record, which we quote, s follows: "The court instructs the jury for the defendant, the Meridian Light & Railway Company, that under the law and the facts in this case, the defendant had the right to decline to cut in the lights upon the application of Miss Gertrude Steele at 1627 Fifteenth Street until Miss Steele should have paid any amount that she was justly due said company, and in arrears with said company, for gas or electric service furnished to her at her address at 14th Street, and if the jury believe from all of the evidence in the case that the defendant, in good faith, believed that the said Miss Gertrude Steele was indebted to it for service previously rendered at the address on 14th Street and in good faith declined to cut in the service at first until said balance was adjusted, and that pending the discussion of this mat-

ter on request of the attorney for the plaintiff, the
Meridian Light & Railway Company, without waiting
for actual payment or actual adjustment of the bal-
ance claimed cut the lights in, leaving the matter of the
disputed bill to be adjusted later, and that the plain-
tiff was, in point of fact, actually indebted to the defend-
ant in some amount, which was unpaid at the time of
her application, then the jury should return a verdict
for the defendant.   It further raised by the court's
instruction No. 1. granted for the appellee, page 108 of
record: "The court instructs the jury for the plaintiff
that although they may believe from the evidence that
the plaintiff (Miss Steele) did owe the defendant a
previous balance on another and different contract at
another and different house, yet the defendant had no
right, after accepting the deposit and agreeing to turn
on the electric lights, to unreasonably delay the installa-
tion of electrical service; and if you believe from a
preponderance of the evidence that the defendant will-
fully and with a wanton disregard for the rights of
this plaintiff, and for the deliberate purpose of coercing
payment of an old account that was in dispute, refused
to furnish to her electrical service, than you will find
for the plaintiff and may assess the defendant with
such sum as may seem to you sufficient, taking into
consideration the wealth of the defendant, the wrong
done and all the other facts in evidence, but in no case
to exceed the amount sued for."   Which instruction, we
submit, is erroneous especially in charging that the ap-
pellant had no right to delay the installation of the
electric service although the jury might believe from
the evidence that the appellee did owe the appellant
a previous balance.   See especially case of *Mackin* v.
*Portland Gas Co.* 4 L. R. A. (N. S.) 596, where it is
held as follows: "A rule of a gas company, consented
to by the consumer, that it will cease to furnish gas
when a consumer becomes delinquent in paying bills

therefor may be enforced by discontinuing the gas supply at one set of premises until payment of a delinquent bill for gas previously furnished the consumer at another set." We also, *State* v. *Board of Water & Light Commissions of Duluth,* 105 Miss. 472, 117 N. W. 827, 127 A. S. R. 581; *Burke* v. *City of Water Valley,* 87 Miss. 732, is not applicable here. In the Burke case the effort was to refuse the water to an application on account of a delinquency of a former occupant of the building not for a balance due by the applicant himself. No such contract and rule and regulation as is involved in the case at bar, was before the court in the Burke Case.

Nor is this case like the case of *Telegraph Co.* v. *Hobart,* 89 Miss. 252. This case is entirely different from the Hobart case by reason of the fact that there was a specific contract hereinabove quoted, which established and gave the right to the defendant, as we submit to do what it did do in this case. The court did not consider the effect of the contract such as is involved in this case, in either the Burke case or the Hobart. Furthermore there was no cutting out in the present instance at all.

We believe that the court will find that in none of the cases from Mississippi has the particular contract involved hereinabove quoted ever been before the court for solution under this record, and we respectfully submit that under this record the court below erred in its interpretation of the contract and in the instructions granted the plaintiff in all to the prejudice of this appellant.

We further submit that the court erred in submitting the question of punitive damages to the jury. On page 143 of the record it will appear that the court refused an instruction to the appellant directing the jury not to award punitive damages, and the court then did submit the question of punitive damages to the jury.

Since the verdict of the jury was only for one hundred dollars, it may be contended that the error of the court in refusing to direct the jury not to award punitive damages was cured by the smallness of the verdict.

In answer to this, however, we submit that the facts did not justify a verdict of one hundred dollars actual damages, and that the verdict of one hundred dollars must be held to have resulted in a large part, at least, if not entirely, from the punitive damages instruction. In other words, unless the question of punitive damages had been submitted to the jury, we submit that it is apparent from the record that no such verdict as one hundred dollars would have been rendered in this case; and that if error in submitting the question of punitive damages the case should be reversed.

We further submit that the court erred in refusing refused instruction No. 5, asked by the appellant and refused by the court, found on page 143 of the record. For the reasons hereinabove set forth, we respectfully ask the court to reverse this case, and render judgment here in favor of the appellant. Or, if the court does not think the appellant is entitled to the judgment in this court on this record, then that the case be reversed and remanded for a new trial.

*F. K. Ethridge,* for appellee.

The courts of the land were established for the purpose of settling disputes of just this nature, and if we are to allow a corporation that serves the public to use such tactics and such means to enforce the collection of accounts which are disputed, then we are at the mercy of just such corporations and the public generally will be the sufferers; such actions are against public policy, unreasonable and unwarranted in law.

There was no contention on the part of the appellant
that it could not at any time have brought suit, and had
the justice or injustice of their claim determined by the
courts of competent jurisdiction, and if Miss Steele
had owed the Meridian Light and Railway Company
one penny they could have enforced their demand
through the proper channel. To allow a public service
corporation to arbitrarily refuse to sell a consumer,
deal with the consumer until a disputed account is
arranged would be placing in their hands a dangerous
instrumentality. As said by the supreme court of
Maine in the case of *Woods* v. *City of Auburn,* in the
29th L. R. A., page 377: "The parties are not upon
equal grounds. The city, as water company, cannot
do as it will with its water. The consumer once taken
on to the system, becomes dependent upon that system
for a prime necessity of business, comfort, health and
even life. He must surrender, and swallow his choken
sense of injustice. Such a power in a water company or
municipality places the consumer at its mercy. It can
always claim that some old bill is unpaid. The receipt
may have been lost, the collector may have embezzled
the money; yet the consumer must pay it again, and
perhaps still again, he cannot resist, lest he lose the
water."

In the case of *Burke* v. *Water Valley,* 87 Miss. 732,
the court in passing on a similar regulation said: "If
gas is supplied to the owner of different houses under
separate contracts, failure to pay the gas bill on one
house does not authorize the cutting off of gas from the
other. Where a consumer of water who was in default,
after the water was turned off, tendered his arrears,
but refused to pay one dollar, as required by regulation
of the company for turning the water on, the court, by
mandamus, compelled the company to turn the water on,
holding the regulation to be unreasonable. See, also,

*Smit* v. *Birmingham Waterworks Co.,* 104 Ala. 315, 16 So. 123."

This court in citing this case and others upon the instant point agreed that such regulations were unreasonable and therefore reversed the judgment in said case.

The learned council for the appellant contend that there was no difference between cutting out the service once installed and refusing to contract. We submit there is a vast difference. That this contract with this appellee provided if I am in arrearage for gas and electric service furnished or for pipes, wiring or appliances furnished at the above designated place, or at any other place, or if any member of my household is in arrears, which arrearage accrued while he was such a member of my household, the company shall render me a bill for such arrearage, and if I fail or refuse to pay same on demand, or if I should fail or refuse to comply with any of the foregoing conditions, then the company may remove the meter, sever all connections, either gas or electric, and discontinue the service."

This was a contract made by the appellants, a contract of their own wording, and of their own choice, and under the law should be strictly construed against the appellant. They drafted the contract, placed therein the items they desired covered, and nowhere in said contract is it provided that they may refuse service or refuse to contract with a party for failure to meet their unjust demands. This appellant when she signed the contract on May 6, 1918, was at the mercy of this corporation, monopolistic in its nature without competition, and the only alternative she had was to sign the contract required or continue to do without the service of what has come to be, in the crowded cities, a necessity. This court has held, "it is a public service corporation without competition, monopolistic in its nature, and the patrons have no choice but to accept its service nor have they any choice but to accept its services.

They have not the privilege of selecting to do business with competitors because there is no competitor, and for this reason the right of the public should be carefully guarded against oppressive methods used for the purpose of collecting unjust demands.'' 89 Miss., page 263.'' The necessity of the law must meet modern conditions.

''The action of the telephone company was wrong, and it was not necessary for Mr. Hobart to pay the wrongfully demanded bill for the purpose of retaining the telephone in his dwelling; if he had done this, it would have been necessary for him to sue for the recovery of the amount overpaid, and to require him to do this, in the language of the case of *Wood* v. *Auburn,* 29 L. R. A. 377, would be a violation of the fundamental juristic principle of procedure. That principle is that the claimant, not the defendant, shall resort to judicial process.'' 89 Miss. 263.

If we admit for the sake of argument that Miss Steele was indebted unto the Meridian Light and Railway Company for service at a prior residence and under a prior contract still this court has decided in the case of the *Telegraph Company* v. *Hobart,* 89 Miss. 259:

''In the first place, there were two contracts between different parties; in the next place if this were not true, they were separate contracts about different properties, and the telephone company could only cut out that telephone for which they had been in default in payment, it (telephone company) had no right to undertake to coerce payment of the amount due on the other telephone by refusing to reinstate the service in his house. In the first place he did not owe it; it was his wife's debt. And in the next place if he owed it, it was a separate contract, and the appellant could only put an end to the particular contract wherein there was default. If gas is supplied to the owner of different

houses under separate contracts, failure to pay the gas bill on one house does not authorize the cutting off of gas from the other.'' Further this court held:

''A telephone company may cut out a subscriber for non payment of dues on reasonable notice, when the dues are not actually paid, but when they are paid or when they are offered to be paid, it acts at its risk in refusing reinstatement of service.''

This case comes squarely under the Hobart case. The testimony herein is nearly parallel thereto and the instructions granted to the plaintiff were in the language of the court in the Hobart case, facts merely changed as to fit the facts in the instant case.

This court in the Hobart case decided: ''When the appellant declined to reinstate it after having been offered the rental of the telephone in the dwelling house it was its duty to reinstate it; and not having done so, it should compensate Hobart for his pecuniary loss, and such inconvenience and annoyance in being wrongfully deprived of its use, as the jury thought proper under the facts. We do not say that damages for inconvenience and annoyance may be recovered in all cases, but from the very nature of the subject-matter of this litigation, annoyance and inconvenience is one of the main elements of damage. Citing the case of *Railway Company* v. *Bloom,* 71 Miss. 247, the court held that damage for discomfeiture and inconvenience might properly be considered as compensatory damages.''

Miss Steele has a right to presume, from the action of the company as shown by the testimony, that she was not indebted to the company. If she had been indebted, as they claimed, they had no right to refuse to render service. If they had desired to enforce the collection of this disputed account, it was their duty to have enforced through the proper courts their demands.

COOK, J., delivered the opinion of the court.

On September 4, 1909, the appellee entered into a contract with the appellant to furnish her with electric light current for her home, No. 1612 on Fourteenth Street. On August 28, 1915, Miss Steele, the appellee, moved her residence to another house in the city of Meridian. About two years after the removal of her home Miss Steele entered into correspondence with the light company looking to the installment of electric lights in her new home. Finally Miss Steele signed this contract:

"Electric | Service Application.

"Name, Miss Gertrude Steele, Occupation

"Address, 1627, 15th St., Meridian, Miss., 5/6/1918.

"I hereby make application to the Meridian Light & Railway Company for *Elec.* to be supplied by meter to be located on premises 1627 15th St. as a residence, and agree to pay for the same promptly at the regular price and according to the rules of the Company; and to pay for all *Elec* registered by said meter until forty-eight hours after written notice has been · given the company to discontinue the service.

"I further agree that the duly authorized agents of the company shall have free access to the meters and connections, including all pipes and wiring, at all reasonable hours and for any purpose.

"I further agree to pay a minimum charge of one dollar for each electric meter per month and fifty cents for each gas meter per month and agree to assume all risks as to damage caused by defective wires or pipes.

"I further agree that if I am in arrears with the company for gas or electric service furnished, or for pipes, wiring, or appliances furnished at the above-designated place, or at any other place, or if any member of my household is in arrears, which arrearage accrued while he was such a member of my household,

the company may render me bill for such arrearage, and if I fail or refuse to pay same on demand, or if I should fail or refuse to comply with any of the foregoing conditions, then the company may remove the meter, sever all connections, either gas or electric, and discontinue the service.

"I have retained a copy of this application and understand fully its terms and conditions.

"[Signed]                      MISS GERTRUDE STEELE,
                               "STEELE EVANS."

After the signing of this contract the light company presented her with a bill for alleged arrearage to the company for electric and gas service furnished her in the former residence. Miss Steele and the light company could not agree about this claim, and finally the company, after a lapse of two or three days, agreed to make connection with her residence, and carried out their contract by installing the lights, the company insisting that the contract was valid and binding.

Inasmuch as we have reached the conclusion that the contract signed by Miss Steele, in so far as she may be bound to pay the arrearages on her former residence before the installment of lights in her present residence, was without consideration and void, and this being true, we hold that she was entitled to actual damages under the facts of the record. *Hobart Case,* 89 Miss. 252, 42 So. 349, 119 Am. St. Rep. 702.

There was nothing in the record warranting the recovery of punitive or exemplary damages, and it was error to instruct the jury that they might in their discretion find for such damages.

*Reversed and remanded.*