## INTERNATIONAL–GREAT NORTHERN R. CO. v. KING.

### No. 9405.

Court of Civil Appeals of Texas. Galveston. March 20, 1930.

Rehearings Denied April 17, 1930.

Andrews, Streetman, Logue & Mobley, and Wolters, Blanchard, Woodul & Pressler, all of Houston, for appellant.

Fulbright, Crooker & Freeman, John H. Crooker, and T. Hughes Cody, all of Houston, for appellee.

LANE, J.

On the 22d day of February, 1928, Joseph King was, as he had been for some time prior thereto, an employee of the International-Great Northern Railroad Company. On said date he happened to an accident by reason of which his left foot and a part of his left leg was cut off and his left arm was cut off at or near the elbow.

On the 10th day of January, 1929, Joseph King instituted this suit against said rail-

road company to recover damages suffered by him by reason of his injuries, as hereinafter stated.

Plaintiff alleged that he suffered his injuries as the result of certain alleged negligence on the part of the defendant; that as a natural consequence of his injuries, proximately caused by the negligence of the defendant, he has suffered "great physical pain and will continue to suffer great physical pain for the remainder of his natural life; that he has suffered great inconvenience in walking and standing, and has been deprived to a very large extent of the enjoyment of life, and that he will continue so to be inconvenienced throughout the remainder of his natural life; that he has suffered other great mental anguish and will continue to do so for the balance of his life; that he has not sufficient business or other training, experience or education to enable him to take up and follow any vocation or employment other than railroading, and he is not able now and will never be able to take up and follow any other vocation or business in order to earn any income or to support and maintain himself, or those dependent upon him, but that he is now and will continue to be wholly dependent upon others for support and maintenance throughout the remainder of his natural life—all to his great damage as hereinafter alleged.

"Plaintiff says that by reason of the physical and bodily injuries hereinabove alleged he has been damaged and is entitled to recover the sum of Thirty-five Thousand Dollars ($35,-000.00); that by reason of the mental anguish and suffering hereinabove alleged he has been damaged and is entitled to recover the sum of Twenty Thousand Dollars ($20,-000.00); that by reason of his lost time and decreased earning capacity since the injuries down to the trial as hereinabove alleged he has been damaged and is entitled to recover the sum of Five Thousand Dollars ($5,-000.00); that by reason of the value at the time of the trial of his diminished earning capacity to labor and earn money in the future from the time of the trial throughout the balance of his life as hereinabove alleged he has been damaged and is entitled to recover the sum of Forty Thousand Dollars ($40,-000.00); all of which were proximately caused by and directly resulted from the negligent acts and omissions of the defendant as herein alleged; and if upon a trial of this case the measure of damages be submitted to the jury separately, or so as to segregate the several and different elements of damage, then plaintiff says that he is entitled to the several amounts herein named for the several injuries sustained by him as herein alleged; and if upon a trial of this cause the measure of damages be submitted to the jury in such a way as that all of the injuries and dam-

ages referred to (exclusive of any nurses, attendants, care, attention, et cetera, as hereinafter alleged) are grouped and combined, then plaintiff alleges the total damages for his said injuries to be Ninety Thousand Dollars ($90,000.00).

"Plaintiff says that by reason of his injuries as aforesaid he has had to rely upon others to do for him many of the ordinary things which people generally do for themselves, and that he will be compelled in the future throughout the remainder of his natural life to rely upon others for the doing and attention of these many things that he might and could do for himself but for his injuries as aforesaid, and that by reason of this condition he will be compelled in the future to have and employ physicians, surgeons, nurses, attendants or other similar help to attend him, to treat him, and to do for him those things which he might and could have done for himself but for said injuries, and that such physicians, surgeons, nurses, attendants, et cetera, will be at a cost to him of not less than Ten Thousand Dollars ($10,000.00), which is the reasonable, true and fair value of said services; that such sum is and will be reasonable and necessary under the circumstances, and that it will be necessary for him to have and employ attention and services here referred to, all of which plaintiff alleges to be reasonably worth Ten Thousand Dollars ($10,000.00), and which said sum is reasonable and necessary and which he is entitled to recover of and from the defendant.

"Wherefore, premises considered, plaintiff prays the court (the defendant having already appeared and answered herein) that upon a final trial hereof he have judgment against said defendant for the sum of Thirty-five Thousand Dollars ($35,000.00) for and on account of the physical and bodily injuries hereinabove alleged; for the further sum of Twenty Thousand Dollars ($20,000.00) for and on account of the mental anguish and suffering hereinabove alleged; for the further sum of Five Thousand Dollars ($5,-000.00) for and on account of the reasonable value of his lost time and decreased earning capacity since the injuries and down to the trial as hereinabove alleged; for the further sum of Forty Thousand Dollars ($40,000.00) for and on account of the value at the time of the trial of his diminished earning capacity to labor and earn money in the future as hereinabove alleged; for the further sum of Ten Thousand Dollars ($10,000.00) for and on account of the physicians, surgeons, nurses, attendants, care and attention, et cetera, past and future, as hereinabove alleged; all aggregating the sum of One Hundred Thousand Dollars ($100,000.00). Or if upon a trial of this case the measure of damages for and on account of all of said injuries and damages (exclusive of the nurses, attendants,

care, attention, et cetera) be submitted to the jury grouped or combined, then the plaintiff prays judgment against said defendant for the sum of Ninety Thousand Dollars ($90,-000.00) for his said injuries and damages as hereinabove alleged, together with the further sum of Ten Thousand Dollars ($10,-000.00) for and on account of the nurses, attendants, care, attention, et cetera, as hereinabove alleged, aggregating the total sum of One Hundred Thousand Dollars ($100,000.00). For all of which plaintiff prays judgment, as well as for all costs of court, and for such other and further relief, special or general, either at law or in equity to which he may show himself entitled."

Defendant by its answer denied generally the allegations of the plaintiff's petition, and specially pleaded contributory negligence on the part of plaintiff.

The cause was tried before a jury upon special issues submitted by the court after defining the terms "negligence," "proximate cause," and "contributory negligence."

In answer to the special issues submitted relative to the acts of negligence charged to the defendant, the jury found that the defendant was guilty of such acts, that such acts were acts of negligence, and that each was a proximate cause of the plaintiff's injuries, and, in answer to the questions relative to contributory negligence, they found that the plaintiff was not guilty of contributory negligence.

The Sixteenth special issue was as follows:

"What sum of money, if paid in cash now, will fairly compensate the plaintiff, Joseph King, for injuries, if any, alleged and proven to have been received by him on the occasion in question, taking into consideration exclusively the following elements of damage, if proven to be a proximate result of said injuries, and none other.

"(a) Bodily injuries, if any, physical pain and suffering, if any, and bodily inconvenience suffered by him, if any, from February 22, 1928, down to the date of this trial, and such as you may find he will reasonably and probably suffer in the future, if any.

"(b) Mental anguish suffered by him, if any, from February 22, 1928, down to the date of this trial, and such as you may find he will reasonably suffer in the future, if any.

"(c) The reasonable value of his decreased earning capacity from February 22, 1928, down to the date of this trial, if any.

"(d) The reasonable present value of his diminished capacity to perform labor and services in the future beyond this trial, if any.

"(e) The present value of the services of physicians, nurses, attendants, or other similar help to attend him and to treat him, if any, as you may find to be reasonable and necessary in the future beyond this trial by reason of such injuries.

"You will answer each of the above items of damage separately, as you may find the facts to be."

In answering the several items mentioned in issue No. 16 separately, as they were instructed to do, the jury found as to item (a) $20,000; (b) $2,000; (c) $2,500; (d) $12,000; (e) $2,000—a total sum of $38,500.

Upon the findings of the jury to all the issues submitted, the court rendered judgment for the plaintiff for $38,500, and from such judgment the defendant railroad company has appealed.

In due time and manner appellant objected to the form in which issue 16 was submitted in the following words: "It allows the jury to attempt to speculate upon five different elements of damage, when from the very nature of this case, if submitted in this form, the jury would consider items of damage in the other elements submitted, thus causing double damages to be assessed against defendant." "And further objects to subdivision of special issue No. 16, paragraph (e) thereof, because there is no evidence in this case warranting the submission of any such issue. And again: "Because said special issue allows the *court* to speculate on five different elements of value separately, causing *them* to confuse the different elements with each other, and thus grant double damages, particularly in view of the very nature of the damages involved in this case."

Appellant on appeal insists that the court committed reversible error in submitting issue 16, in that by such charge the court required the jury to find separately the decreased earning capacity of appellee, brought about by the loss of his arm and leg, as shown by paragraphs (c) and (d), which constitutes the measure of the bodily injuries, and then also required the jury to include and find, as shown by paragraph (a), compensation for bodily injury, thus allowing a recovery of double damages.

We are not prepared to sustain appellant's contention that the submission of such charge constitutes reversible error.

The undisputed evidence shows that appellee's arm and leg were horribly crushed, causing an amputation of both of such members, that, by reason of such loss of such members of his body, appellee suffered great physical pain and suffering, and that by reason of such loss he suffered bodily inconvenience. The physical pain and suffering referred to in the charge as a result of bodily injury needs no explanation. The inconvenience referred to as resulting from bodily injury is shown by the undisputed testimony of appellee, as follows:

"Now, as to whether I have any difficulty in getting around the house and doing the ordinary things like putting my clothes on and taking them off and doing anything that the average man would want to do around the house, I have often thought since it happened that if they were to sound the fire alarm I guess I would jump out of my head as I wouldn't have time to dress. It takes a long time. I can dress myself with exertion and by taking a long time, but as a rule my mother does it when I am here and my wife when she is able. My mother and wife live in the home with me. One of the greatest privileges that I know of that has been taken away from me is getting in and out of the bath tub; I never have been able to do it since. I am afraid to trust myself, especially getting out, and I have tried every way I know how by myself, slide in there; my wife and my mother help me in and help me out the same way because when this artificial limb is off and that stub there is enough to balance I am just suspending myself on one foot and this hand to balance me, that is all. I will show you how high I can elevate that stub of left arm. (Illustrates). * * *

"Without going into an elaboration of it, aside from what I have already said, there are numerous other things I cannot do with that one leg off and one arm off such as I could do before losing them; there are many, many things that I cannot do now that I could do before this injury. I have done swimming during my lifetime. I have tried it since my injury; I was in water about neck deep but I had some help; I couldn't swim. It was in July last and it was a real running stream; I didn't take any chances, but I had some boys with me in case that I slipped or fell."

█ Such being the facts, it was, we think, imperatively necessary that the court should tell the jury that, in determining what sum of money would fairly compensate the plaintiff for his injuries, if any, up to the date of the trial, they should take into consideration his bodily injuries, which might be shown caused him to suffer physical pain and inconvenience. So we say that the grouping of the items appearing in subsection (a) presents no error and beyond question no reversible error.

█ Nor did the submission of subsections (b), (c), and (d), in connection with subsection (a), and that paragraph next preceding it, constitute error. It could not, we think, tend to lead the jury into an assessment of double damages, as contended by appellant.

Necessarily the jury would be required to take into consideration the nature and extent of appellee's "bodily injury" in determining the extent of (1) appellee's physical pain and suffering up to the date of the trial and thereafter in the future as a result of his "bodily injury"; (2) the inconveniences suffered by ap-

pellee by reason of such "bodily injury" up to the date of the trial and thereafter in the future; (3) appellee's mental anguish suffered by reason of such "bodily injury" up to the date of the trial and thereafter in the future; (4) appellee's loss of earning capacity by reason of his "bodily injury" to date of trial and thereafter in the future.

It is inconceivable, we think, that a jury of ordinary intelligence could have been led into the belief by the preliminary statement preceding subdivisions (a), (b), (c), and (d) of special issue No. 16, that they were authorized to award to appellee any recovery for "bodily injury" other than the items particularly specified in such subdivisions, unless it be such only as mentioned in subdivision (e) of said special issue No. 16, which we shall separately discuss later in this opinion. Reiterating substantially the language used in Ry. Co. v. Maxwell, 61 Tex. Civ. App. 80, 128 S. W. 160, we have no doubt that many cases have been reversed upon the contention that the jury were misled by the charge of the court, when nothing of the kind occurred.

In determining. whether or not a jury was misled by a charge, it is fair to allow something for the intelligence of the jurors and assume that common sense would save them from the commission of such error as appellant contemplates might have occurred in the present case.

Appellant insists that the finding of the jury that appellee was entitled to a recovery of $2,500 as the reasonable value of his decreased earning capacity from the date of his injuries to the date of the trial, some thirteen months, is so grossly excessive as to show a lack of due and calm deliberation, and to show either prejudice against appellant or sympathy for appellee, and therefore such finding should be set aside.

No good could be served by a detailed discussion of the lengthy evidence offered pro and con, relative to the question of the earning capacity of appellee. It is sufficient to say that we have examined the testimony upon such issue and have reached the conclusion that there is sufficient evidence to support the finding of the jury.

Appellant also insists that an award of $20,000 to appellee for physical pain and suffering and inconveniences as a result of his bodily injuries, as well as the award of $2,000 to him for mental anguish growing out of such injuries, was grossly excessive.

██ While the awards complained of are large and might be more than the members of this court would have awarded under the facts had it been their prerogative to fix the same, the law has furnished no legal rule for measuring such damages, and therefore the amount to be awarded rests largely within the discretion of the jury, and, unless the awards

are so large as to indicate they were the result of passion, prejudice, or some corrupt motive, or that the evidence has been disregarded, the amount found by the jury should be held to be conclusive and should not be set aside as excessive.

In Ruling Case Law, vol. 8, § 215, p. 673, the following rule is announced: "In actions sounding in damages merely, where the law furnishes no legal rule for measuring them, the amount to be awarded rests largely in the discretion of the jury, and unless so large as to indicate that it was the result of passion, prejudice, or corruption, or that the evidence has been disregarded, their verdict is conclusive and will not be set aside as excessive, either by the trial court or on appeal. Full compensation is impossible in the abstract, and different individuals will vary in their estimate of the sum which will be a just pecuniary compensation, and so all that the court can do is to see that the jury approximates a sane estimate, or, as it is sometimes said, that the results attained do not shock the judicial conscience. The courts will of course interfere with the verdicts of juries when it is manifest that they are the result of corruption, prejudice, or passion; and so it is the province of the court to set a verdict aside where it clearly appears to be excessive, or where the jury in rendering it appear to have disregarded the testimony. The amount awarded must bear some reasonable proportion to the injury sustained. However, since it is for the jury and not for the court to fix the amount, a verdict will not be set aside merely because it is large, or because the reviewing court would have awarded less."

See, also, Cumberland Telegraph & Telephone Co. v. Hobart, 89 Miss. 252, 42 So. 349, 119 Am. St. Rep. 702.

We are not prepared to hold that the awards complained of show that they were the result of corruption, prejudice, or passion, nor that they are not supported by evidence. Such being the case, we are not at liberty to interfere with the finding of the jury.

By the charge of the court complained of by appellant—that is, special issue No. 16, subsection (e), hereinbefore set out—the court instructed the jury to find the present value of the services of physicians, nurses, attendants, or other similar help to attend appellee and to treat him, if any, as they might find to be reasonable and necessary *in the future beyond the trial*, by reason of his injuries. (Italics ours.)

Appellant, in effect, insists that as there was only a surmise or conjecture as to such expenses or costs of future medical services, etc., and no evidence that such costs would be reasonable, and no evidence of future need for physicians, nurses, or attendants, or other similar help, the court erred in submitting the issue to the jury, and that the finding of the jury of the sum of $2,000 in answer to such issue is without any evidence to support it.

We have carefully examined the statement of facts, and find no evidence to support a finding that appellee contemplated the employment of a physician or nurse or other attendants from the date of the trial in the future. The only evidence remotely tending to support a finding that appellee, by reason of his injuries, would reasonably be required to employ a physician, a nurse, or other attendant, was the testimony of Dr. Cox, as follows:

"I did make an examination of this plaintiff recently, Joe King; I saw him Saturday and Monday, this past Saturday and Monday. It is obvious that he has his left arm cut off at or above the elbow, which you can see as well as a doctor. The same thing is true with respect to his leg which is off about 3¼ inches above the ankle joint. In addition to that he had a partial ankylosis of the left shoulder joint, and that means he has limited motion; he only has about, I would say, seventy per cent., or rather he has lost seventy per cent. and has about thirty per cent. motion in that joint; and he has a very marked atrophy of the principal muscles, the deltoid and biceps muscles, which support the shoulder.

"Atrophy means the un-nourishment of muscles, a sort of wasting away.

"As to this condition in his shoulder: I did not know what happened, so I thought it best to X-ray him, and I found that the head of the humerus had pushed up into the capsule and there was about a half to a quarter of an inch which looked like a traumatism in the shoulder joint. Traumatism means an inflammatory condition from some accident or tearing of the tissues, from force or something of that kind. Taking into consideration the history of his case, his injury, I do not of my own knowledge have any way to tell how that condition occurred. As I said, by traumatism I mean there is evidence of some force or jerk. His prospects with respect to that injury are, he might obtain some improved motion there by vigorous treatment, but I don't see how he can restore the loss of those muscles and completely restore that joint. The treatment that might be tried to improve that condition may be massage, manipulation, and we have a new treatment—it is about two or three years old—called diathermy that might stimulate circulation; in other words, it is electrical heat. My judgment about the matter of such treatment is simply this: We have had experience in helping those cases when they were not too far advanced or of too long standing. It would do more good for a joint than it really would for the muscles. I do not think this condition of his can be cured, or largely cured. In my opinion he will have a deficiency in that shoulder of from 60 to 70 per cent. I don't think he will

improve much. That means he would have about 30 or 40 per cent efficiency, that much use of it. He cannot rotate his arm like you are now rotating yours."

Cross-examination:

"The first time I saw Mr. King was last Saturday, and then Monday last. I would think these treatments I have suggested, exercise and the electrical treatment, might be worth trying, but I couldn't tell you how much improvement there would be. Perhaps it would result in benefiting him. I think it ought to be tried."

Redirect examination:

"The treatments I have testified about cost money. I do not use those treatments myself and I refer those cases to that department of other doctors who use it. Dr. Sauerman up there on my floor gives those treatments. I had one case that I had him to see and it cost him about four or five hundred dollars; I had to see that case seven or eight months. In that case it was Bost who gave the treatment, Dr. Bost. There are different people here in town who are equipped to give those treatments. The massage treatments I spoke of are also given at different places here, and they cost so much per treatment.

"What I have testified to is about the best general idea I can give you of this case."

We think this testimony insufficient to support the finding complained of. It was shown by the testimony of the appellee himself, hereinbefore set out, that he suffered certain inconveniences by reason of his injuries, such as inability to bathe and dress himself, etc., without help, and that the help of his wife and his mother would be required in the future to bathe and dress him and to attend to other things, and that such help became and was necessary by reason of the inconveniences suffered by him as a result of his bodily injuries. Appellee contends that, under the evidence showing that the services of his wife and his mother would be required to partially relieve him of the inconveniences suffered by reason of his injuries, he should be permitted to recover under the charge of the court the reasonable value of such services. Such contention we think untenable, as appellee was, by the verdict of the jury in answer to subsection (a) of the special issue No. 16, awarded $20,000 not only for physical pain and suffering, but such bodily inconveniences suffered by him by reason of his injuries. Having recovered for bodily inconveniences under the item submitted by subsection (a), he should not be permitted to recover for the same item under subsection (e). Authorizing such recovery by the charge would allow the jury to award two recoveries for the same item of damage, but, as we have found that there was no evidence authorizing the submission of subsection (e) of the charge complained of, or to support the finding of the

jury that appellee would be required or that he would in fact incur any expense in the employment of a physician, nurse, or other attendant, after the trial by reason of his injuries, and as we have reached the conclusion, based upon our said finding, that appellee was not entitled to a recovery of any sum for the items specified in subsection (e), the error in submitting such subsection, and the finding of the jury in response thereto, is rendered harmless, and presents no grounds for a reversal of the judgment as a whole.

Prior to the preparation of this opinion, this court entered an order upon its trial docket ordering reversal of the judgment of the trial court and a remand of the cause for further trial, unless appellee should, within fifteen days, file in this court a remittitur of $2,000. Since said orders were entered upon the docket, appellee has filed his motion praying that such order be set aside, and that, if the court still maintains its conclusion that appellee is not entitled to recover the items mentioned, an order in lieu of the one entered be that the judgment be affirmed in all respects, except that part thereof awarding to appellee the $2,000 for expenses which he might incur from the date of the trial in the future for services of physicians, nurses, etc., be reversed and rendered in favor of appellant, subject to appellee's exception thereto.

Since we have found that there was no evidence to support the award of the $2,000, we think appellee's motion should be granted, and it is so ordered, and we now affirm the judgment in all respects except as to that part awarding to appellee the $2,000 above mentioned, and that part of the judgment is reversed and rendered in favor of appellant, thus reducing the judgment in favor of appellee to the total or aggregate sum of $36,500.

Chief Justice PLEASANTS dissents from the affirmance of any part of the judgment, and will file his dissenting opinion setting out his points of dissent.

Affirmed in part; reversed and rendered in part.

PLEASANTS, C. J. (dissenting).

When the decision of this case was announced, I entered by dissent from the conclusion of the majority of the court that the charge of the trial court submitting the issue of damages did not authorize the jury to assess double damages, by including as separate items of damage what can only be properly regarded as one element of damage.

In compliance with the statute, I now make the following statement of the grounds of my dissent:

The charge complained of is accurately copied in the opinion of the majority. The subdivisions of this charge which I think are clearly obnoxious to the well-established rule

against the double submission of the same element of damage, are:

"(a) Bodily injuries, if any, physical pain and suffering, if any, and bodily inconvenience suffered by him, if any, from February 22, 1928, down to the date of this trial, and such as you may find he will reasonably and probably suffer in the future, if any."

"(c) The reasonable value of his decreased earning capacity from February 22, 1928, down to the date of this trial, if any.

"(d) The reasonable present value of his diminished capacity to perform labor and services in the future beyond this trial, if any."

It seems to me that the court could not have more clearly submitted plaintiff's bodily injuries as an element of damage separate and distinct from his physical pain and suffering, the bodily inconvenience suffered by him, and the value of his decreased earning capacity. I am wholly unable to follow the reasoning of the majority opinion in the holding, in effect, that the clause "bodily injuries" as used in this charge are mere words qualifying the meaning of the other elements or items of damage submitted by the charge. Such construction seems to me to violate every known rule for the construction of our written language. If the law permitted a plaintiff who had, as appellee has, lost a portion of an arm and a leg through the negligence of the defendant, to recover damages for such lost members in addition to damages for the physical and mental pain and suffering and the lost earning capacity caused by his injury, his right to recover for such lost members could not be more clearly submitted than is done in this charge. Ry. Co. v. Butcher, 98 Tex. 462, 84 S. W. 1052; Ry. Co. v. Nesbit, 40 Tex. Civ. App. 209, 88 S. W. 891; Stamford Oil Co. v. Barnes, 55 Tex. Civ. App. 420, 119 S. W. 872.

It is probably true, as stated in the opinion of the majority, that a number of cases have been reversed on the ground that the charge of the trial court authorized a recovery of double damages when the jury, in considering their verdict, did not so understand the charge and did not award double damages. The irrelevancy of this observation is apparent when the language of the charge in question is only susceptible of being construed as authorizing recovery of double damages. If the language of this charge could be held doubtful, there is nothing in the record of this case which authorizes the holding that the jury was not misled thereby and did not include double damages in their verdict. On the contrary, the large amount of the damages awarded by the jury in response to submission (a) of the charge indicates that in fixing the amount the jury did allow damages for the loss of appellee's arm and leg in ad-

dition to the pain and suffering, bodily inconvenience, and loss of earning capacity caused by his injury, and it is certainly no reflection upon the intelligence of a jury of laymen to assume that they understood the charge to authorize damages for each of the items or elements mentioned therein.

If the charge could be construed as not a positive erroneous instruction, it was clearly misleading, and upon this record the judgment should be reversed and remanded on that ground. Ry. Co. v. McCraw, 43 Tex. Civ. App. 247, 95 S. W. 82.

In my opinion the judgment should be reversed and the cause remanded.